McAdam, J.
On December 28,1892, Helen Stowell filed a bill in this court against John M. Stowell for absolute divorce, on the ground of adultery, committed by the defendant with a woman named Ida Levy, at 106 Eighth avenue, in the city of Hew York, a house in which the said Helen and John M. Stowell resided at the time.
It appears by the complaint that the Stowells were married May 28, 1874, at St. Joseph, Michigan; that for more than five years prior to the filing of the bill they were residents of the state of Hew York; that the issue of the marriage was one daughter, Ada J. Stowell, then aged seventeen years. The complaint charges that the adulteries were committed between April and September, 1892 ; that they were committed without the consent, connivance, privity or procurement of plaintiff, and that she had not cohabited with the defendant since she discovered them.
Ho answer was interposed, and on March 10, 1893, a decree was made in favor of Helen Stowell against her husband, dissolving the marriage.
IJpon the trial of that case Ada J. Stowell, the daughter, was the principal witness. She testified that on September 30, 1892, she went upstairs from the kitchen and saw her father and Ida Levy on the bed together; that her father had his clothing off *76 and that Mrs. Levy had her clothes loosened; that this occurred at about a quarter to nine or nine o’clock in the evening, and that she informed her mother of it subsequently.
About ten days after the entry of this decree the said Helen Stowell married James McIntyre, the plaintiff in the action first-above entitled. McIntyre filed his bill for divorce May 7, 1894, alleging that since March, 1894, Helen McIntyre (formerly Stowell) was living in open adultery with John M. Stowell, her former husband, at No. 1038 Park avenue, in the city of Hobo-ken, New Jersey. No defense was interposed, and the action came on for trial June 13, 1894.
It was proved on the trial of that action that Mrs. McIntyre was residing with her daughter at No. 1038 Park avenue, Hoboken, New Jersey; that the former husband frequently visited the house, having a night-key thereto, and that on one or more occasions he remained in the house all night; that Mrs. McIntyre and Stowell were arrested at Hoboken under a warrant issued by George F. Seymour, a justice of that city, charging them with living in open adultery, in violation of the laws of New Jersey. No examination has yet been held in that criminal proceeding, which is still pending.
Immediately after the testimony was taken in McIntyre v. McIntyre, Mr. Stowell, the co-respondent, applied to the court for leave to intervene, upon the ground that he was innocent of the charges made against him by McIntyre, and that McIntyre’s application was collusive. Before determining this application the court concluded to inquire into the merits, and for that purpose several witnesses were examined. Mr. Stowell testified that the charges made by McIntyre against him were false and untrue; that, although he had a night-key to the house in which Mrs. McIntyre resided at Hoboken, he obtained it from his daughter for the purpose of visiting her; and that since the divorce obtained by the wife from him he had never had connection with her. He also testified that he never had connection with Ida Levy, the person named as co-respondent in the suit brought by his wife against him; that he was asleep in his bed; that he was awakened, and when he looked around he discovered his wife and Mrs. Levy in his room; that the wife made no outcry, used no terms of censure, found no fault with Mrs. Levy’s presence beyond saying that she went a little too far, or something of that sort. He further testified that some conversation was had between him and his wife about a divorce; that he told her that if she thought more of McIntyre than she did of him, and could put herself in a position to be his (McIntyre’s) wife, without injuring her daughter, she might do so as soon as she pleased; that he had already made up his mind that he would never live with her again, and that if she could put herself in a position to become McIntyre’s wife legally he (Stowell) would not interpose any objection.
It also appeared that Stowell had paid his wife no alimony and no counsel fee; that McIntyre had paid the expenses of obtaining the divorce granted to Mrs. Stowell. Indeed, the testimony of Stowell clearly demonstrates that Mrs. Levy was brought into his *77 bedroom by Mrs. Stowell in furtherance of this design, and for the purpose of furnishing apparent grounds for the divorce. Mr. Stowell also testified that the daughter, who testified against him in the suit brought by his wife, was not in the room at the time he awoke, or, what amounts substantially to the same thing, that he did not see tier there ; so that the story of the daughter finding the father va. flagrante delicto and then telling her mother was evidently untrue.
It is also passing strange that in the suit of Stowell v. Stowell the daughter testified for the mother against the father, and in McIntyre v. McIntyre she testified for the father in order to prevent McIntyre from obtaining a divorce; the relations between the father and daughter during the entire time being of the most friendly character.
That the suit of Stowell v. Stowell was commenced and prosecuted with the sole design of obtaining; a decree against Stowell so that Mrs. Stowell might marry McIntyre is apparent, and that Stowell was privy to this fraudulent combination is also clear.
Collusion in the matrimonial law is an agreement between husband and wife, for one of them to commit, or to appear to commit, or to be represented in court as having committed, a breach of matrimonial duty for the purpose of enabling the other to obtain the legal remedy of divorce as for a real injury. Where the act complained of as a ground for the divorce has in truth not been done, collusion is a real or attempted fraud upon the court. 2 Bishop on Marriage and Divorce, § 28.
There are three parties to every application for divorce. Hot only the parties to the record, but the public, also, have an interest in marriage and its dissolution. Ib., § 230.
Growing out of this twofold interest, we have the doctrine, running through all matrimonial suits, and bringing into subserviency all other law on the subject, that the proceeding, though upon its face a controversy between the parties of record only, is in fact, a triangular suit, sui generis, the government, or public, occupying the position of a third party, without counsel, it being the duty of the court to protect its interests. Ib., § 230.
Connivance destroys all claim to remedy by way of divorce; and is founded on the obvious principle that no man has a right to relief from a court for an injury which he was chiefly instrumental in effecting himself. Myers v. Myers, 41 Barb., at p. 120.
Another strong feature in the case is, that up to, and for two days after, the time when the papers were served in the suit of Mrs. Stowell against her husband she was living with him. This circumstance, with the other before mentioned, and the significant fact of the marriage to McIntyre almost immediately after the divorce was procured, show that it was part of a conspiracy in which all the parties united that Mrs. Stowell should obtain a divorce for the sole purpose of marrying McIntyre, who had visited the house of Mr. and Mrs. Stowell for some time prior to the bringing of that suit. A clearer case of fraud and collusion could hardly be presented.
For these reasons it becomes the duty of the court, representing *78 the state, to set aside the decree obtained by Mrs. Stoweli, together with all other proceedings had in the action, and an order to that éffect will be entered.
As to the McIntyre Case, the proofs clearly show that, under the guise of paying alimony to the wife, McIntyre gave her one thousand dollars, and that this payment resulted in an agreement on the part of the wife that she would not defend the suit, and the proposed defense thereof was abandoned.
Without giving in detail the particulars of this collusion, it is sufficient to say that McIntyre’s application for divorce niust be deided upon the ground of collusion—a course which makes it unnecessary to consider the other proofs it the case.
Whether these people should be proceeded against criminally is a question for subsequent consideration. It is sufficient for present purposes to say that such practices cannot be tolerated, but must receive the most severe condemnation.
The position this decision may leave the parties in is a question with which the court lias nothing whatever to do. It must pronounce against fraud, collusion and imposition at all times and under all circumstances, leaving the guilty parties to take whatever consequences flow from their wrong.
The examination of the different witnesses must remain on file, and the orders directed to be entered are founded upon such testimony and upon the judgment roll in the case of Stowell v. Stowell, which will be found in volume 114 of the Divorce Eecords of the court.