[S. F. No. 6171. In Bank.—January 2, 1915.]

HERMAN E. REHFUSS, Appellant, v. ELIZABETH A. REHFUSS, Respondent.

DIVORCE—NEGLECT OF WIFE TO DEFEND ACTION—FEAR OF LOSS OF INFANT CHILD.—The failure of a wife to contest an action for divorce resulting in an interlocutory judgment against her, due to fear engendered in her by the representations made to her by her husband and her own attorney that if she did defend, her infant child would be taken from her and its father, and placed in some public institution, is excusable neglect, within the meaning of section 473 of the Code of Civil Procedure.

ID.—MOTION TO SET ASIDE JUDGMENT—RELIEF UNDER SECTION 473 OF CODE OF CIVIL PROCEDURE—MOTION FOR NEW TRIAL NOT AVAILABLE. In such action, where the wife's original answer traversing the complaint was superseded by an amended answer, which admitted all of the allegations of the complaint and raised no issue of fact, her remedy was by motion for relief under section 473 of the Code of Civil Procedure, and not by motion for a new trial. The latter remedy is available only where issues of fact have been raised and tried.

ID.—SETTING ASIDE JUDGMENT FOR COLLUSION—DUTY OF COURT.—On the hearing of such motion, if the trial court disbelieved the affidavits and testimony of the wife assigning such cause for her failure to contest the action, and accepted as true the counter-affidavits to the effect that the divorce was acquiesced in by her in pursuance of an arrangement between the spouses, it was the duty of the court

to vacate the interlocutory judgment on the ground of collusion between the parties.

ID.—PRACTICE IN DIVORCE ACTIONS—SETTING ASIDE DEFAULT—AFFIDAVIT OF MERITS NOT NECESSARY.—The rules of practice applicable to divorce actions differ in many respects from those which govern other actions. In such actions, upon very slight showing, the court will set aside a default, if application for relief be made in due time, and no affidavit of merits is necessary in support of the motion.

ID.—STATE HAS INTEREST IN ACTION FOR DIVORCE—DUTY OF COURT.—The marital relation can be dissolved only by consent of the state, and upon statutory grounds, presented in good faith to a court of competent jurisdiction. An action for divorce concerns not only the parties immediately interested, but also the state. It is the duty of the court, as in a sense representing the state, to guard strictly against fraud, collusion, or imposition.

ID.—COURT MAY VACATE COLLUSIVE OR FRAUDULENT JUDGMENT ON ITS OWN MOTION.—Where it becomes manifest to the court before it loses jurisdiction of the case, that a judgment decreeing a divorce has been obtained by collusive agreement between the parties, or through fraud practiced upon the court, the court has the inherent power to set aside the judgment. This it may do on its own motion.

ID.—CONSIDERATION BY COURT OF UNANSWERED CROSS-COMPLAINT.—In passing upon the motion to vacate the judgment the court had the right to take into consideration the fact that there was an unanswered cross-complaint of the wife on file containing allegations which, if true, should prevent the husband from obtaining a divorce.

APPEAL from an order of the Superior Court of the City and County of San Francisco setting aside an interlocutory judgment of divorce. Thos. F. Graham, Judge.

The facts are stated in the opinion of the court.

Austin Lewis, and R. M. Royce, for Appellant.

Stafford & Stafford, for Respondent.

SULLIVAN, C. J.—Appeal from order setting aside an interlocutory judgment of divorce.

Plaintiff brought an action against defendant for divorce, on the ground of extreme cruelty. Defendant answered, denying specifically the acts of cruelty alleged against her. With her answer she filed a cross-complaint, charging plaintiff with extreme cruelty and praying for a divorce from him. No answer to the cross-complaint was ever filed. After filing

her original answer and cross-complaint, the defendant filed an amended answer in which she admitted all of the averments of the plaintiff's complaint. Thereafter the case was tried. At the trial the defendant appeared in person. Her attorney was not present and she was not called upon to testify. Plaintiff's attorney testified to the fact of plaintiff's residence for the requisite length of time in California and in the county wherein the action was brought. Plaintiff, the only other witness, testified that on one occasion defendant fired a shot at him from a pistol, with intent to kill. He testified to no other act of cruelty. The testimony as to the shooting was not corroborated. In her original answer, referring to the shooting, the defendant alleged that on a certain occasion she "discharged a pistol near plaintiff, but not at him or with intent to kill or injure him, but merely to frighten him, shortly after he had cursed and sworn at defendant and called her vile and low names, and after plaintiff had badly beaten, hurt and badly injured defendant." At the trial no reference was made to defendant's cross-complaint on file. On the testimony of plaintiff and his attorney the court granted an interlocutory judgment, adjudging that he was entitled to a divorce and awarding him the custody of the minor child of the parties, aged two years. After judgment the defendant employed other attorneys to represent her in place of her original attorney. Through her substituted attorneys she moved the court, within four months after the trial, to set aside the judgment taken against her, upon the following grounds: 1. That the judgment was taken against her by reason of her mistake, inadvertence, surprise, and excusable neglect; and 2. That the cause was not at issue at the time of trial. In her affidavit used upon the motion, defendant alleged that the denials and averments contained in her answer and cross-complaint are true, and averred that "she reiterates the averments and statements contained in her answer and said cross-complaint." She further deposed that it was her intention to contest plaintiff's application for a divorce; that in pursuance of her intention she filed her answer and cross-complaint; that on June 19, 1911, her attorney then representing her advised her to sign an amended answer admitting the truth of all of the allegations of plaintiff's complaint, although the same were untrue; that she "was solely induced to sign said amended complaint

(answer) on the advice of her said attorney, who told her
that if she contested said action the court would award the
custody of the only child of plaintiff and said defendant,—
namely, Herman E. Rehfuss, Jr., to some public institution,
and that the care and custody of said child would be taken
from both plaintiff and defendant . . . that she was deeply
attached to said child and interested in its welfare, and
moved solely by love for said child she consented to sign said
so-called amended answer.'' In her affidavit she stated that
her attorney advised her that if the child were awarded to
the plaintiff she would be permitted to see the child and ''have
him more or less in her care,'' and if the child were placed
in some public institution she would not have such right or
privilege; that she appeared at the trial at the request of
plaintiff, who told her that ''the judge might want to see
her and ask some questions.'' She also stated in her affidavit
that ''her husband had told her that if she contested said
action her child would be taken from him and her and given
to some public institution.'' One of plaintiff's attorneys in
an affidavit used in opposition to the motion averred that
notice of the time and place of trial had been given to the
defendant; that her attorney, upon whom the notice had
been served, ''stated that he would not be present at said
trial, as there were no issues, but that defendant should be
present . . . that on the 31st of May defendant's attorney
wrote to affiant a letter in which he stated: 'I will file a with-
drawal of Mrs. Rehfuss' answer, so you can serve me with
notice of trial and I will not appear.' '' He further deposed
in his affidavit that on the nineteenth day of June, 1911, he
received from defendant's attorney another letter in which
the latter stated: ''I have to-day had Mrs. Rehfuss verify the
amended answer and filed it. You stated when I last saw
you that you would have Mr. Rehfuss sign the agreement re-
garding the custody of the child and file it. Would you
kindly let me know when you do file same. I hope you will
now have the matter set for trial and would deem it a favor
if you would notify me of the result of the court's decision.''
In an affidavit by defendant's former attorney, filed in op-
position to the motion, he denied that he had given the advice
or made the statements alleged in defendant's affidavit to
have been given and made. He alleged in his affidavit that
pending the action the parties arrived at an agreement con-

cerning their property rights and the custody of their child; that this agreement was the result of a meeting of the parties and their attorneys in the office of the attorneys for the plaintiff; that pursuant to this agreement the plaintiff executed and delivered to his wife a quitclaim deed conveying to her certain real property in dispute between them, and that the defendant on her part, in consideration of the deed, executed an agreement relinquishing to the husband her right to the custody of the child; that when the defendant received the deed she instructed her attorney to withdraw her answer and cross-complaint and said to him: "Let him (referring to her husband) go ahead now and get his divorce." He further deposed, using his own language, "that the defendant instructed me immediately after the said meeting of the said parties in Mr. Austin Lewis's office, that after all documents were executed carrying out the terms therein agreed upon that I was to then file a withdrawal of the answer and cross-complaint filed therein by the defendant and the plaintiff was to proceed with the divorce as he thought fit"; that on June 13th he called upon plaintiff's attorneys "with a view to filing a withdrawal of the answer and cross-complaint"; that one of the plaintiff's attorneys in the interview "suggested that it would be better for the court records if the defendant were to file an amended answer admitting the charges in the complaint." He further stated in his affidavit: "The next day I consulted with the defendant and she remarked that she was agreeable to signing this (amended answer), as she wanted him now to go ahead and get his divorce; that she was well satisfied with the matters as I had arranged them for her." Plaintiff himself filed no affidavit in response to that of defendant, nor did he testify at the hearing of the motion, although oral testimony was then taken.

The failure of plaintiff to deny the averments of defendant's affidavit that he "had told her that if she contested said action her child would be taken from him and her and given to some public institution," warranted the court in believing that the plaintiff had made such representations to her. The record before us shows beyond doubt that the interlocutory judgment was taken against defendant through her excusable neglect or through a collusive agreement entered into between the parties. In either event, the judgment was properly set

aside. Upon the showing made by the defendant, if the court believed the declarations contained in her affidavit, the court was justified in holding that her failure to defend the action was due to her excusable neglect, induced by fear that if she did defend, her infant child would be taken from her and its father and placed in some public institution. This fear was engendered in her, according to her sworn statement, by the representations made to her by her husband and her own attorney. Her neglect, under the circumstances detailed in her affidavit was excusable in law.

Section 473 of the Code of Civil Procedure, provides that "the court may, likewise in its discretion, . . . relieve a party or his legal representative from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect." The defendant was entitled to relief under this section. Her remedy could not be by motion for a new trial. Her original answer was superseded by her amended answer, which admitted all of the allegations of the complaint and raised no issue of fact. No issue of fact having been raised or tried, defendant had no right to move for a new trial, as a new trial is a re-examination of issues already tried.

In a divorce action, "whether the defendant suffered default or not, the relief shall not be granted until the facts upon which it is sought or established be proven. In such an instance, however, as in any other where the defendant makes default and suffers judgment upon a mere *ex parte* showing, his remedy in seeking relief from the judgment is in section 473 of the Code of Civil Procedure, and not upon motion for a new trial." (*Foley* v. *Foley*, 120 Cal. 33-37, [65 Am. St. Rep. 147, 52 Pac. 122].)

If the trial court disbelieved the statements made by defendant in her affidavit and her oral testimony given at the hearing of the motion, and accepted as true the allegations of the affiants contained in their affidavits used in opposition to the motion, the court was bound to vacate the interlocutory judgment on the ground of collusion between the parties. In *Mulkey* v. *Mulkey*, 100 Cal. 91, [34 Pac. 621], an action for divorce, the defendant moved to set aside a default judgment. The motion was denied and the defendant appealed. In reversing the order denying the motion the court said: "The facts stated in the affidavit of defendant show either collusion

between the parties or that the defendant was grossly misled and deceived by her husband. . . . In either case, the court should have been prompt to set aside the judgment and to allow the defendant to answer, so that the case might be heard and determined on its merits.''

The rules of practice applicable to divorce actions differ in many respects from those which govern other actions. In an action for divorce, upon very slight showing the court will set aside a default, if application for relief be made in due time. And although in other actions a party seeking relief from default must support his motion by an affidavit of merits, no such affidavit is required on motion to set aside the judgment in an action for divorce. The law is at all times very solicitous to preserve the integrity of the marriage relation. That relation is the basis of the family, the foundation of society. It cannot be destroyed by the mere consent. whim, or caprice of the parties to the marriage, nor can it be stipulated away in judicial proceedings. The relation can be dissolved only by consent of the state, and upon statutory grounds, presented in good faith to a court of competent jurisdiction. An action for divorce concerns not only the parties immediately interested, but also the state. The attorneys in the case represent the respective parties—the court in a sense represents the state. It is the duty of the court, representing the state, in accordance with the letter and policy of the law, to guard strictly against fraud, collusion, or imposition when the husband or wife seeks to dissolve the bonds that bind them together. As well said by the supreme court of Connecticut in *Allen* v. *Allen,* 73 Conn. 54, [84 Am. St. Rep. 135, 49 L. R. A. 142, 46 Atl. 242] : ''Where an attempt is made through the courts to undo a marriage, the state becomes in a sense a party to the proceedings, not necessarily to oppose, but to make sure that the attempt will not prevail without sufficient and lawful cause shown by the real facts of the case, nor unless those conditions are found to exist at the time the decree is made upon which the state permits a divorce to be granted. The state has an interest in the maintenance of the marriage tie, which neither the collusion nor the negligence of the parties can impair.'' Where it becomes manifest to the court before it loses jurisdiction of the case, that a judgment decreeing a divorce has been obtained by collusive agreement between the parties, or

through fraud practiced upon the court, the court has the inherent power to set aside the judgment. This it may do on its own motion. (*McIntyre* v. *McIntyre*, [9 Misc. Rep. 252], 30 N. Y. Supp. 200; *Welch* v. *Welch*, 16 Ark. 527; 2 Nelson on Marriage & Divorce, sec. 1050; *Edson* v. *Edson*, 108 Mass. 590; [11 Am. Rep. 393]; *Earle* v. *Earle*, 91 Ind. 27; *Johnson* v. *Coleman*, 23 Wis. 452, [99 Am. Dec. 193]; *Allen* v. *MacLellan*, 12 Pa. St. 328, [51 Am. Dec. 608]; *Boyd's Appeal*, 38 Pa. St. 241; *Adams* v. *Adams*, 51 N. H. 388, [12 Am. Rep. 134]; *Graham* v. *Graham*, 54 Wash. 70, [18 Ann. Cas. 999, 102 Pac. 891]; *Rush* v. *Rush*, 46 Iowa, 648, [26 Am. Rep. 179].)

One of the grounds of defendant's motion was that the cause was not at issue at the time the interlocutory judgment was rendered. Although ordinarily this ground would not be sufficient to warrant the court in setting aside a judgment, yet the court had a right to take into consideration in passing upon the motion to vacate the judgment in this case, the fact that there was an unanswered cross-complaint of defendant on file containing allegations which, if true, should prevent the plaintiff from obtaining a divorce.

The order appealed from is affirmed.

Henshaw, J., Melvin, J., and Lorigan, J., concurred.