[Civ. No. 13449.   First Dist., Div. One.   Sept. 19, 1947.]

AMY L. WILTERDINK, Respondent, v. WILLIAM H. WILTERDINK, Appellant.

Lawrence A. Cowen for Appellant.

Lloyd J. Cosgrove and Cosgrove, Molinari & Tinney for Respondent.

BRAY, J.—The trial court refused to grant defendant's motion to set aside his default and the interlocutory decree of divorce. The motion was made on two grounds: first, under section 473 of the Code of Civil Procedure, defendant's alleged mistake, inadvertence, surprise and excusable neglect; secondly, alleged fraud in that defendant was in the naval service and no attorney was appointed to represent him under the Soldiers' and Sailors' Civil Relief Act of 1940, as amended. (50 U.S.C.A. App. p. 113 et seq.)

With one exception, there is practically no dispute as to the facts. These parties had been married about 33 years. Defendant's life career has been that of a navy officer, although while still in the Navy he was admitted to the California Bar in 1919 and practiced law about two years in Solano County. He also acted as an attorney at Puget Sound in 1928 or 1929. On January 2, 1941, he was taken prisoner by the Japanese in Shanghai, China, and remained such prisoner until August 31, 1945. His experiences caused a mental and physical disability, as a result of which he was a patient at a naval hospital from September, 1945, to June, 1946, and which eventually resulted in his retirement from the Navy. On his return home a condition resulted in which, to use his own words, "we were finding . . . [no happiness] as we drifted on together." The parties discussed the situation and practically agreed that the wife should apply for a divorce. Defendant, on May 27, 1946, made out a "Memorandum of Assets," a proposed 50/50 division of those assets, and also an additional list of stocks and bonds to be likewise equally

divided. The parties then consulted Attorney Cosgrove. They visited his office on three or four occasions, defendant stating that he would not employ an attorney. It was agreed that plaintiff should file suit for divorce and that defendant would not contest it, but would let it go by default.

The action was filed on June 25 and that same day a property settlement agreement was signed by both parties in Attorney Cosgrove's office. Certain figures in the agreement were written in by the defendant. Defendant was then and there served with a copy of summons and complaint. Attorney Cosgrove told defendant that, contrary to defendant's claim as to the practice in Solano County, it was not necessary in San Francisco for the defendant to be represented by an attorney. Defendant then gave Cosgrove an address in New Jersey requesting that as soon as the interlocutory decree was obtained, the attorney so advise defendant by wire. On July 13, defendant wrote plaintiff a letter which indicates that plaintiff had sent him a newspaper clipping concerning the filing of the divorce action. This letter stated, among other matters, ''So, don't hold up the proceedings any longer but ask Lloyd Cosgrove to have the case heard soon as he can, and let's have the unfortunate mess behind us. Don't you really think—in view of all the preparations and the amicable arrangements we've agreed upon—that it will ultimately turn out the best thing for us to do? The more I've pondered over the situation these past weeks the more I'm convinced. . . . Your day in court will not be difficult for I'm sure Lloyd will handle the situation with ease and every possible courtesy to you, and so will the Court. *The more I think about it, the more pleased I am with his handling of the case.*'' (Emphasis added.) Before leaving, defendant arranged for the transfer of their assets in accordance with the division in the agreement. The next day defendant left for the East. He returned to California on August 25. His notice of motion in this matter was filed on November 1.

On July 31, the day she obtained her interlocutory decree, plaintiff filed a moratorium affidavit in which she swears ''that she knows of her own knowledge that the said defendant is not engaged at the date hereof in the military service or naval service or as a member of the armed forces of the United States of America. . . .'' The only disputed fact in the case is whether defendant stated in the attorney's office during the negotiation period that he was then retired from the Navy.

Attorney Cosgrove filed an affidavit in which he claims that defendant so stated. Defendant denies it. However, defendant had appeared the week previously in San Diego before the Retirement Board and they had recommended his retirement for physical disability. In his visits to the attorney's office he wore civilian clothes, with the possible exception of one visit when he is not sure whether he wore his uniform. He admits that he did state that he had been recommended for retirement and that he hoped his terminal pay would extend to November 1. It was not until August that the Navy definitely decided to place defendant on the retired list, such retirement to take effect as of November 1.

Upon the filing of the moratorium affidavit, the default of defendant was taken, and after testimony by plaintiff and her witness, an interlocutory decree of divorce was granted. This decree approved the property settlement agreement and ordered the payment of support as provided therein.

So far as the claim that the default was taken through mistake, inadvertence, surprise or excusable neglect of defendant is concerned, there is not one iota of evidence to support it. In his affidavit of merit accompanying the notice of motion there is nothing to support such a claim. The only ground asserted is the failure of the court to appoint an attorney for him. As shown in the foregoing statement of facts, defendant knew that his default was to be taken and that there would be no attorney to represent him. Defendant apparently was eager to have the divorce granted. He accepted service of summons and complaint, and as a lawyer he knew the effect of such service; he requested to be wired as soon as the decree was obtained. (This the attorney did.) Eighteen days after he left the attorney's office he wrote his wife, ". . . don't hold up the proceedings any longer but ask Lloyd Cosgrove to have the case heard as soon as he can, and let's have the unfortunate mess behind us." It would have been a travesty on justice had the trial court set aside the default on this ground.

Defendant concedes "that in the absence of a clear showing of abuse of discretion an appellate court will not disturb the order" and "that the burden of showing such abuse of discretion is on the appellant." (*Hambrick* v. *Hambrick,* 77 Cal.App.2d 372, 377 [175 P.2d 269].) He then refers to the rule that liberality in granting relief under section 473 is particularly enjoined upon the courts where the application

is to set aside a default judgment in a divorce action. (*Rehfuss v. Rehfuss,* 169 Cal. 86 [145 P. 1020]; *Smith* v. *Smith,* 64 Cal.App.2d 415 [148 P.2d 868]; *Hambrick* v. *Hambrick, supra* 77 Cal.App.2d 372.)

▆ Based on those cases, defendant contends, in effect, that a defendant in a divorce case who desires his default set aside is entitled to such relief without making any showing other than his desire. This, of course, is not the law. Even in divorce cases, there must be some showing of facts which excuse the default. The reason for a different rule in divorce cases than in other cases is given in *Smith* v. *Smith, supra,* p. 419 [64 Cal.App.2d 415]: "This rule is based upon the ground that the state is interested in preserving the integrity of the family relation, which cannot be destroyed merely by the consent of the parties." In view of that reason, it is interesting to note that in this case, it is not the divorce with which the defendant is most concerned, but the court's order putting into effect the provision of the property settlement agreement requiring him to pay plaintiff the sum of $200 per month alimony, in spite of defendant's reference to it in his letter to plaintiff as the *"amicable arrangements we've agreed upon."* (Emphasis added.)

It seems hardly necessary to call attention to the fact that in the cases last referred to there were facts shown to the court which justified setting aside the defaults. Here, no facts are given. The affidavit does set forth defendant's imprisonment by the Japanese and that by reason thereof he has suffered "mental and physical disability," and is to be retired by the Navy, but it is nowhere claimed that he did not know the effects of his action in arranging with Attorney Cosgrove to get the divorce heard as soon as possible, nor that his mental faculties were impaired to the extent that he did not know that his default was to be taken, nor that he did not know the contents of the agreement which he spent considerable time working out, nor that he did not understand what Attorney Cosgrove meant when they discussed the question of whether the defendant desired an attorney to represent him at the hearing. It is evident that this is a case in which the defendant was fully satisfied with all that had taken place, until in November he discovered that his agreement to pay his wife the alimony was becoming a bit onerous.

▆ The answer to the facts of this case and the rule set forth in the cases cited by defendant is contained in the follow-

ing extract from the opinion in *Elms* v. *Elms*, 72 Cal.App.2d 508, at page 513 [164 P.2d 936] : ''While it is the judicial policy liberally to construe section 473 to the end that trials on the merits may be had, we find nothing in defendant's affidavit to warrant an order vacating the annulment decree. To do so would be to grant a new trial at the capricious demand of a defendant who was either grossly negligent or had changed his mind after the judgment.   One may not be relieved from his default unless he makes a showing that he has acted in good faith and demonstrates that his excusable neglect was the actual cause of his failure to attend the trial. ▮  Neither one's change of mind nor his inexcusable negligence is ground for vacating a judgment.   To warrant relief under section 473 a litigant's neglect must have been such as might have been the act of a reasonably prudent person under the same circumstances.''

▮  The second ground of motion is no more tenable than the first.   It is based upon the falsity of the moratorium affidavit and the failure of the court to appoint, under the Soldiers' and Sailors' Civil Relief Act, an attorney to represent defendant at the default hearing.   Just what such an attorney would have accomplished does not appear.   The court granted the divorce (which it is evident from defendant's actions, his statements to Attorney Cosgrove, and his letter to plaintiff, defendant wanted done), and strictly followed the terms of the property settlement agreement which defendant had negotiated and signed.   Had the court appointed an attorney and had the attorney communicated with defendant, it is readily apparent that there would have been no change in the proceedings or decree.   Defendant undoubtedly would have urged him, as he did plaintiff, not to ''hold up the proceedings.''

▮  It is true that the moratorium affidavit falsely stated that defendant was not in the armed forces.   However, if defendant did not state that he was actually retired, as Attorney Cosgrove said he did, it is understandable that both plaintiff and her attorney could very well have misunderstood the situation.   Defendant had just returned from being examined by the Retirement Board at San Diego, which was recommending his retirement, and told them that much at least; he was wearing civilian clothes; he talked about his retirement pay, and how long he hoped his terminal pay might continue.

■ Defendant's contention resolves itself into the proposition that the failure of the court to appoint an attorney to represent him necessarily requires a setting aside of the default. This is not the law.

In the recent case of *Allen* v. *Allen*, 30 Cal.2d 433 [182 P.2d 551], the Supreme Court very clearly decides the effect of the Soldiers' and Sailors' Civil Relief Act as follows: "Section 200(1) of the act [54 Stats. 1180; 50 U.S.C.A. App. § 520] (1) provides that if there is a default of appearance by the defendant in any proceeding, plaintiff shall file an affidavit showing that the defendant is not in the military service. If such an affidavit cannot be filed, plaintiff must file an affidavit showing that defendant is in the military service or that plaintiff is unable to determine whether or not defendant is in such service. If an affidavit cannot be made showing that defendant is not in the service, the court shall not order the entry of judgment without appointing an attorney to represent defendant and protect his interests. In the present case, no such affidavits were filed by plaintiff, although the court was informed by Fisher that defendant was in the military service. There is no doubt that the trial court erred in failing to appoint an attorney to represent the defaulting serviceman. . . . The error of the trial court in failing to appoint an attorney to represent defendant does not, however, render its order void. Section 200 of the act, requiring the appointment of a representative for the protection of the serviceman before entry of judgment, also contains a provision authorizing a trial court to vacate or set aside its judgment in any proceeding where it appears that the serviceman was prejudiced by reason of his military service in making his defense: 'If any judgment shall be rendered *in any action or proceeding governed by this section* against any person in military service during the period of such service or within thirty days thereafter, *and it appears that such person was prejudiced by reason of his military service in making his defense thereto,* such judgment may, upon application, made by such person or his legal representative, not later than ninety days after the termination of such service, be opened by the court rendering same and such defendant or his legal representative let in to defend; provided it is made to appear that the defendant has a meritorious or legal defense to the action or some part thereof. . . .' . . . The foregoing provision prescribes the procedure to be fol-

lowed by a serviceman whose defense has been prejudiced by reason of his military service. This provision would be mere surplusage had Congress intended to condemn as void those judgments and orders entered contrary to the directions of other provisions of section 200. Accordingly, it is held that proceedings contrary to section 200 are valid until properly attacked. [Citing cases.]'' (First emphasis the court's; second added.)

To properly attack such proceedings the serviceman must show that by reason of his military service he was prejudiced in making his defense. In this case, defendant's military service had nothing to do with his failure to make a defense. His failure so to do was deliberate and planned. As an attorney he knew the effect of a default, and he wanted it that way. He had been recommended for retirement, and was practically out of the military service. According to his letter, he was spending most of his time while in the East visiting and having a good time. He came to San Francisco on August 25, after he knew the divorce had been obtained, and gave no indication that he had changed his mind about being completely satisfied with all that had occurred. It was not until two months later that he suddenly decided to attack the proceeding.

If, as the court held in the Allen case, *supra* [30 Cal.2d 433], the failure to file any affidavit, or of the court to appoint an attorney, even where it was informed that the defendant was in the military service, does not make the judgment void, and throws the burden on a defendant who wants the judgment set aside to prove how his military service prejudiced him in making a defense, then it logically follows that the filing of an affidavit false in fact as to the military status of the defendant does not make the judgment void. Particularly is that so, where the circumstances as here are such that the untrue statement could well have been the result of a misunderstanding of the true situation, and where the defendant was in no wise prejudiced by it.

In *McMahon* v. *McMahon*, 70 Cal.App.2d 126 [160 P.2d 892], the refusal of the court in a divorce case to set aside the judgment was upheld where the defendant in the military service had signed a stipulation waiving his rights under the Soldiers' and Sailors' Civil Relief Act, where his rights under that act and the purpose of his waiver were fully explained to him by the attorney for his plaintiff wife.

In *Miller* v. *Miller*, 26 Cal.2d 119 [156 P.2d 931], in determining that there had been no abuse of discretion in denying defendant, who was in the military service, a continuance under the above act, on a motion brought against him to set aside a final decree of divorce on the grounds of his alleged fraud in obtaining it, the court discussed at length the purpose of the act. It stated that the relief provided by the act is only to be granted where the military service materially affects the conduct of a defendant's defense; that the rights under the act are not absolute but dependent in each case upon the judge's determination "whether the service man's rights would be adversely affected by the fact of his service. (*Johnson* v. *Johnson*, 59 Cal.App.2d 375, 383 [139 P.2d 33].)" (p. 124.) See, also, *McArthur* v. *Shaffer*, 59 Cal.App.2d 724 [139 P.2d 959].

In his affidavit defendant does not claim that he expected an attorney to be appointed for him. His sole statement in this behalf is that he "believed that it was not necessary for him to make an appearance and file an answer to said complaint by reason of the Act of Congress which provides for a moratorium for persons in" the armed forces. Nor was it necessary. The divorce was obtained just as he knew it would be obtained. If this portion of his affidavit means that he believed that his case would be delayed by moratorium, it is definitely contrary to the truth as indicated by his letter, his testimony on the stand at the hearing of the motion, and the statement of his counsel on argument in this court that defendant never desired nor expected a stay of the proceedings.

Defendant complains of the refusal of the court at the hearing of the motion to permit defendant to impeach or refute the testimony of the corroborating witness at the divorce hearing. Defendant offered to prove by his own testimony that the corroborating witness knew none of the facts to which she testified. Defendant has cited no case to support his contention that the court erred in this behalf. The notice of motion contained no ground upon which such testimony would be admissible. Such testimony would only be admissible in the event the default were set aside.

Apparently for the first time, in his closing brief, defendant makes the contention that "on a deeper probe of the record it will become evident to the court that the default judgment thus entered was void for the reason that the jurisdictional element of residence was not proved at the divorce

hearing." There are two answers to this: First, that were it true, the motion was not based on any such ground. ■ It is only lack of jurisdiction that appears on the face of the judgment roll that can be attacked without being included in the grounds of a motion. (14 Cal.Jur. pp. 1047, 1050.) ■ And secondly, the contention is based on technical constructions given certain isolated questions asked the corroborating witness and entirely ignoring another "omnibus" question and answer which fully covered the jurisdictional requirements.

As the trial court in nowise abused its discretion, the order appealed from is affirmed.

Peters, P. J., and Finley, J. pro tem., concurred.