[S. F. No. 656.    Department Two.—July 1, 1897.]

FANNIE A. MORTON, Respondent, *v.* JOHN D. MORTON, Appellant.

Divorce—Default Judgment—Refusal to Set Aside—Appeal.—An application to set aside a judgment for a divorce which was rendered by default is addressed to the sound legal discretion of the trial court, and its action in denying the application will not be disturbed on appeal, unless a clear abuse of such discretion is shown.

Id. — Conflict of Evidence. — Where the evidence adduced on such an application is conflicting, it is not an abuse of discretion to deny the motion.

Id.—Extreme Cruelty—Condonation.—Where an action is commenced by a wife for a divorce on the ground of extreme cruelty, consisting of successive acts of ill-treatment, the fact that she continued to live with the defendant for some time, and until the summons was served, will not amount to condonation, unless accompanied by a reconciliation between the parties, a remission of the matrimonial offenses and an express agreement to condone.

Appeal from an order of the Superior Court of Napa County refusing to set aside a default judgment. E. D. Ham, Judge.

The facts are stated in the opinion.

*Thomas A. McGowan,* for Appellant.

*Henry C. Gesford,* and *Dinkelspiel & Gesford,* for Respondent.

Belcher, C.—The plaintiff instituted this action in the superior court of Napa county to obtain a divorce from the defendant upon the ground of extreme cruelty.

The complaint was filed September 25, 1895, and the summons was duly served on defendant October 14th thereafter. He failed to appear, and on November 11th judgment was entered dissolving the bonds of matrimony between the parties, and awarding the plaintiff permanent alimony in the sum of twenty dollars per month, and thirty-five dollars costs of suit. Defendant received at San Francisco, on November 20th, notice of the entry of the judgment, and on December 7th he served and filed notice that he would move the court to vacate and set aside the judgment upon the ground that it was taken against him through his mistake, inadvertance, surprise, and excusable neglect. The motion was heard by the court in January, 1896, and thereafter denied; and from that order this appeal is prosecuted.

The motion was submitted upon the affidavit of defendant, and oral testimony given by Edward A. Bell, and by the plaintiff and the defendant.

The substance of defendant's affidavit was that, after the commencement of this action, he and the plaintiff lived and cohabited together as husband and wife, at their home near Calistoga, in Napa county, until about the middle of October, 1895, when he left and went to San Francisco; that prior to the commencement of this action plaintiff had commenced another action for divorce against him, and thereafter they had become reconciled and lived together, and both had been advised by their respective attorneys that by reason of such reconciliation the action could not be further prosecuted; that plaintiff had told defendant that he must leave, as she would no longer live with him, and he had told her that she could obtain a divorce if she so desired, but that he would not permit a divorce upon the grounds set out in the complaint, as the charges of cruelty therein made were not true; that he would leave Napa forever, provided she would not ask a decree awarding to her any alimony or other sums of money; that plaintiff promised defendant that she would not take any judgment in this case, but would wait a year and then have

her attorney file a new complaint asking for a divorce upon the ground of desertion, but not asking either alimony, counsel fees, or costs; that defendant transferred all his real and personal property to plaintiff, and, relying upon the promises made by her to him, left the county of Napa without filing any answer in this case; and that after his departure, and without notice to him, plaintiff caused judgment by default to be entered against him.

Edward A. Bell testified that he represented the defendant on the settlement made between him and the plaintiff as to their property rights; that no written agreement was entered into, but his understanding was that, under the agreement, plaintiff took all the personal property then on her farm near Calistoga, and paid defendant therefor the sum of forty dollars; and that nothing was said one way or the other about the divorce.

Plaintiff testified that the premises on which she and defendant were living at the commencement of the action were her separate property, and that she continued to live there with defendant until the summons was served because she had no other place to go to, and did not want to leave her personal effects to the mercy of defendant, as he had threatened to destroy them if she ever left him; that "I never at any time entered into any agreement with defendant, express or implied, to condone his matrimonial offenses or to forgive him, neither did I ever forgive him or condone his offenses, and never was there at any time any reconciliation between us after the commencement of this action. I passively endured the defendant because I could not help myself, until I had an opportunity of safely taking other action. After this action was commenced defendant treated me with harshness and cruelty, as he had done before, and our relations continued just as strained as previously. Every allegation of the defendant's affidavit on this motion to the effect that a reconciliation was had between us, or that we entered into any agreement of condonation, is absolutely false."

She also testified that all the statements made in defendant's affidavit, except those contained in the first paragraph thereof as to the commencement of the action and the judgment, and that she and defendant lived together until the middle of October, 1896, were untrue.

Defendant testified " that John D. Morton was not his real name—that his real name was John D. James—and that he had been convicted of a felony in the state of California, from San Diego county, and had served a term in state's prison at San Quentin; and he also stated, in substance, that prior to the granting the divorce he was willing for her to get a divorce, and that he had declined to make a defense."

It is settled law in this state that applications of this kind are addressed to the sound legal discretion of the trial court, and that its action in granting or denying them will not be disturbed on appeal unless a clear abuse of such discretion is shown. (*Coleman* v. *Rankin*, 37 Cal. 247; *Garner* v. *Erlanger*, 86 Cal. 60; *Williamson* v. *Cummings etc. Co.*, 95 Cal. 652.)

That the court believed the facts to be as stated by the plaintiff, and not as stated by the defendant, is clearly shown by its action, and this being so there was obviously no abuse of discretion in denying the motion.

The point that plaintiff must be held to have condoned defendant's offenses, because she lived and cohabited with him after the action was commenced and until the summons was served, cannot be sustained. In an action for divorce on the ground of cruelty there can be no condonation unless there is a reconciliation between the parties, a remission of the matrimonial offenses and an express agreement to condone. " Condonation implies a condition subsequent; that the forgiving party must be treated with conjugal kindness." (Civ. Code, sec. 117.) "Where the cause of divorce consists of a course of offensive conduct, or arises, in cases of cruelty, from successive acts of ill-treatment which may, aggregately, constitute the offense, cohabitation, or passive endurance, or conjugal kindness shall not be

evidence of condonation of any of the acts constituting such cause, unless accompanied by an express agreement to condone." (Civ. Code, sec. 118.)

The order should be affirmed.

CHIPMAN, C., and SEARLS, C., concurred.

For the reasons given in the foregoing opinion the order is affirmed.
MCFARLAND, J., TEMPLE, J., HENSHAW, J.