## Ersilia Egidi *vs.* Ettore Egidi.

### MAY 3, 1915.

PRESENT:　Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1) Divorce. Condonation.*

Condonation is always upon the condition implied by law that there shall be no just cause for complaint in the future.

*(2) Divorce. Condonation.*

Where the charge in a divorce petition is cruelty, much less cruel treatment than would be necessary to be a good ground for divorce will suffice to avoid the defence of condonation and a wife is more indulgently considered as to condonation than the husband so that voluntary cohabitation on her part following acts of cruelty will not always operate as a condonation to defeat a petition for divorce.

*(3) Divorce. Condonation.*

Under the rule that cohabitation while a petition for divorce is pending is regarded as condonation and a bar to the relief sought, where a petitioner testified that after the petition was filed, she went back to her husband "to see whether he would be good or not" and that she "thought he probably would be all right," the inference is not unwarranted that she returned intending to live with respondent on condition that he would treat her with conjugal kindness, and where further acts of cruelty are proved, the defence of condonation falls.

*(4) Divorce. Condonation. Procedure.*

Where a wife filed a petition for divorce on the ground of cruelty and while the petition was pending returned to her husband and because of further acts of cruelty left him, the petitioner is entitled to proceed under the original petition, but must obtain relief upon acts of respondent committed before the filing of the petition, and if respondent sets up the defence of condonation by her conduct since such filing petitioner may present evidence of his conduct to defeat such defence.

DIVORCE.　Heard　on　exceptions　of　respondent　and overruled.

BAKER, J. This is a petition for divorce from bed and board containing a prayer for the custody of two children of the ages of five and three years, respectively, and for an allowance for the support of the petitioner and her children. The sole ground alleged in the petition is extreme cruelty.

The case was heard in the Superior Court on the 24th and 25th days of September, 1914. At the close of the testimony in chief for the petitioner and after all the testimony was in the respondent moved to dismiss the case on the ground of condonation. The motions were denied and to the denial of the last motion the respondent excepted as well as to the decision hereinafter referred to. After the denial of the second motion the court decided in favor of the petitioner, granting her prayer for a limited divorce, awarding her the custody of the minor children and ordering the respondent to pay her six dollars each week for the support of herself and the children and a decree to that effect was entered said September 25. The case is before this court on respondent's bill of exceptions setting up the two grounds of insufficiency of evidence and condonation. He does not really press the point of insufficiency of evidence and from an examination of the transcript of the testimony in the case we are of the opinion that the decision of the trial judge as to the existence of extreme cruelty is amply sustained, so that the only question requiring consideration is that of condonation.

The claim of condonation is based upon the admissions of the petitioner herself, that after signing the petition for divorce she returned to her home and remained there three days and that she at that time slept with her husband. The husband's claim is that she lived with him from seven to nine days. Her testimony on which the claim of condonation is based is as follows: "62 C. Q. After you signed this paper" (the petition) "you went back home and lived with your husband for ten days, didn't you? A. No sir. 63 C. Q. How many days? A. The first time I signed the paper I went home and stood with him three days more. I thought he probably would be all right, but then

when I saw that he kept on slapping me I went away."
. . . "66 C. Q. Then after you signed the petition—A.
I did that to see whether he would be good or not, but
when I saw he kept on slapping me, then I couldn't stand it
any longer. 67 C. Q. After you signed that petition you
lived with your husband, is that right? A. The first
time I said I have been there three days, the second time I
never went. 68 C. Q. Well, how many petitions for divorce
have you signed within the past six or seven months?
A. That is all, only one. I think there was a letter written."
. . . "74 C. Q. And at the time you signed that it was
explained to you that you were asking for a separation from
your husband? A. Yes sir. 75 C. Q. Now, bear that
in mind, I am talking about when you signed this paper you
went home and lived with your husband. Answer yes or no.
A. Yes sir, three days." . . . "77 C. Q. You slept
with your husband? Answer yes or no. A. Yes, I slept
with my husband. I don't suppose I would sleep with
somebody else. 78 C. Q. You say that three days after-
wards you left him? A. Yes, because he slapped me and I
couldn't stand it any longer and I left him." In connection
with this testimony these facts as they appear from the
papers in the case may properly be noted. The petition
in this case was signed and sworn to August 4, 1914. It
was filed August 5 and citation was issued the same day.
The citation was given to the sheriff August 6 and, as shown
by the officer's return, served upon the respondent August
11th.

Condonation has been repeatedly defined by the courts
and text writers, but the definition as given in Section 269,
Vol. 2, Bishop on Marriage, Divorce and Separation, may be
accepted as a satisfactory one. It is as follows: "Sec. 269.
Condonation is the remission by one of the married parties
of an offence which he knows the other has committed
against the marriage on the condition of being continually
afterward treated by the other with conjugal kindness,—
resulting in the rule that while the condition remains un-

broken there can be no divorce, but a breach of it revives
(1) the original remedy." Certain other things relating to
condonation seem to be so well settled that it is needless to
cite authorities in their support; for example, the forgiveness
of the act or acts complained of may be expressed or implied;
the law always implies a condition that there shall be no just
cause for complaint in the future; condonation is available as
a defence to the charge of cruelty, but the defence is more
easily avoided when set up against such a charge than to the
charge of adultery; where the charge is cruelty much less
cruel treatment than would be necessary to be a good ground
(2) for divorce will suffice to avoid the defence of condonation
and a wife is more indulgently considered as to condonation
than her husband owing to her comparative helplessness
and her greater dependence upon him so that voluntary
cohabitation on her part following acts of cruelty on his part
will not always operate as a condonation to defeat a petition
for divorce. In *Wilson* v. *Wilson*, 16 R. I. 124, where the
petitioning wife lived with the respondent "receiving him as
husband" for ten days after the last act of violence, reasons
were found to exist for holding that this did not amount to a
condonation of the cruelty complained of.

Two questions arise upon the quoted testimony of the peti-
tioner and the facts stated in connection therewith. First:
Do her acts after signing the petition amount to a condona-
tion of the offence charged? Second: If so, was the condition
of condonation broken by a renewal of the acts of cruelty so
that the original remedy remained? As the justice of the
Superior Court granted her petition, although the claim
of condonation was made before him, his decision clearly
shows that in his judgment this claim was not well founded.
But whether the ground of his decision was that the conduct
of the petitioner after signing the petition did not amount
to a condonation or that while amounting to a condonation
it was forfeited as a defence by a subsequent act of cruelty it
is impossible to say.

In view of the indulgence extended to wives in such cases, and in view also of the facts that the two young children needed her care, that the husband was the wage earner, that they were poor and must of necessity have lived in restricted quarters with meagre furnishings, as indicated by the small weekly allowance ordered in the decree to be paid for the support of the wife and her children, her inability to speak English and her fairly presumable ignorance of the possible significance of her conduct in its relation to this case in returning to the home and bed of her husband strong grounds exist for urging that such conduct did not amount to a condonation of her husband's offence. And if this be held there would be an end of the defence. On the other hand where one has shown a belief in a charge of marital misconduct by filing a petition for divorce, it is ordinarily held that cohabitation, while the proceeding is (3) pending, is to be regarded as condonation and a bar to the relief prayed for. See Sec. 295, Vol. 2, Bishop on Marriage, Divorce and Separation. Taking this into consideration in connection with petitioner's answers to C. Q. 63 and 66, as above stated, wherein she gives as the reason for going back not any of the things mentioned above, but that it was "to see whether he would be good or not," and that she "thought he probably would be all right," the inference that she went back intending to live with him on the condition that he would treat her with conjugal kindness is perhaps not unreasonable. If that inference were adopted, her conduct might be regarded as amounting to a condonation. Assuming that to be the case, was there a breach of the condition? She testifies that he continued to slap her after she went back and he denies it. They are the only two witnesses on this point. The burden is upon her to prove it. They do not as witnesses necessarily offset each other. The court on reasonable grounds may believe one and not the other. We think the record shows that, speaking generally, the trial judge gave greater credit to her testimony than to his. A careful examination of the record leads us to the con-

clusion that her testimony is the more trustworthy and that it is reasonable to conclude that her statements as to ill-treatment after'her return to him are correct. For example, he says that he was served with the citation August 4th, while as already shown it was not issued until August 5th and service thereof was really made August 11th, several days after she had finally left him. In this connection see *Robbins* v. *Robbins*, 100 Mass. 150, 151, and *Hann* v. *Hann*, 58 N. J. Eq. 211.

Upon this finding of fact the defence of condonation falls as the parties have not lived together since the last act of cruelty. It is not necessary to cite cases to show this, as the definition above quoted points out the conditional character of the forgiveness, as well as the effect of a breach of the condition. But the case of *Sewall* v. *Sewall*, 122 Mass. 156, with the cases therein cited, well illustrates the matter. In that case the wife had previously filed a petition for divorce on account of adultery. While the case was pending she and her husband made a settlement of their former troubles, in fulfillment of which she dismissed the petition and agreed to, and did live with him on condition of his conducting himself in a proper marital manner. On a repetition of his offence afterwards, in subsequent proceedings for divorce it was held that such dismissal, agreement and condonation did not bar the wife from seeking a divorce for either her husband's earlier or his later acts of adultery.

As to the present case, therefore, it is unquestionably true after what has been said that upon the wife's leaving her husband on August 7th or 8th she was then free to begin proceedings for divorce on the ground of extreme cruelty and to prove in support thereof any such acts prior to the filing of her petition. In other words, her right of action existed as fully as if the question of condonation had never arisen.

The only question remaining is whether under the facts found to exist in the present case the petitioner could rightfully proceed and obtain a divorce under the petition

signed August 4th. In other words, was the petition in effect abated by anything which was shown to have occurred after its signing? It does not seem necessary to so hold. In principle we do not see why the petitioner may not proceed with her present petition. She must, of course, obtain the decree, if at all, upon acts of the respondent committed by him before she filed her petition, but when at the trial the defendant set up the defence of condonation by her conduct since such filing there would seem to be no good reason why in reply she might not present evidence of his conduct which, if established, would defeat such defence. If he was permitted to show her conditional forgiveness, in fairness she should be permitted to show a breach of the condition. There are not many cases on the precise point. In *Douglass* v. *Douglass,* 81 Iowa, 258, which was a petition for divorce on account of cruel treatment, the court on page 266 says: "There is a claim of condonation because of cohabitation after commencement of this suit. The claim has no support in the record because of the after conduct of the defendant." The record shows a repetition of cruelty after cohabitation.

In *Tackaberry* v. *Tackaberry,* 101 Mich. 102, the husband filed a petition for divorce on the ground of extreme cruelty. Afterwards while the petition was still pending in court the parties composed their difficulties and lived with each other again for a short time, when they again separated. The wife then filed an answer to the petition making charges of cruelty and drunkenness against him and asked that the answer be treated as a cross bill. The court on page 104 says: "It is clear that the reconciliation did not operate to divest the court of· jurisdiction. Defendant afterwards came in and filed her cross bill, made counter charges, and upon proof the court gave her a decree. Nor was the cohabitation a bar to the divorce upon the ground of extreme cruelty. Even condonation of adultery is but a conditional forgiveness, and a repetition revives the offence."

In *Harnett* v. *Harnett*, 59 Iowa, 401, the wife who was the petitioner remained in the same house with the husband and cooked and washed for him until the decree was rendered, without however sustaining more intimate relations with him. It was held that this did not amount to a condonation.

In *Morton* v. *Morton*, 117 Cal. 443, the wife sought the divorce on the ground of extreme cruelty. The complaint was filed September 25, 1895, and the summons was served on the defendant on October 14th. The petitioner lived and cohabited with her husband after the action was commenced and until the summons was served. It was held that there was no condonation. This case lacks the importance of the other cases cited as an authority because the decision rests mainly on a statute requiring proof of "an express agreement to condone" accompanying acts which ordinarily might he held to imply condonation. In this case, however, there was evidence of harshness and cruelty on the part of the husband after the commencement of the action.

On the other hand, in *Bronson* v. *Bronson*, 7 Phila. 405, it was held that condonation pending proceedings in divorce for adultery puts an end to them and subsequent acts of adultery will not avoid its effect. But this was based on a statute explicitly providing that if a libellant having knowledge of an act of adultery "shall admit the respondent into conjugal society and embraces, the same shall be a perpetual bar to the divorce." It was pointed out, however, that this applied only to proceedings for divorce on account of adultery.

In *Thelin* v. *Thelin*, 8 Ill. App. 421, 424, it is held that evidence of renewed acts of cruelty subsequent to a condonation would have to be availed of by a supplemental bill and not under the original bill. The court says: "For in respect to the causes alleged in the original bill they had been extinguished by the condonation. This principle is elementary and requires the citation of no authorities." It is difficult to understand how this statement could be

made, for as already indicated the great and practically the entire weight of authority is otherwise.

We are of the opinion, therefore, that both upon principle and the weight of authority the petitioner in this case is not barred from obtaining a divorce under her present petition by reason of any evidence on which the respondent has based his claim of condonation.

The respondent's exceptions are overruled and the case is remitted to the Superior Court for further proceedings.

*Anthony V. Pettine,* for petitioner.
*Bennie Cianciarulo,* for respondent.