[Civ. No. 3720. Fourth Dist. May 4, 1948.]

MARIE SCHLETEWITZ, Respondent, v. CARL SCHLETEWITZ, Appellant.

Lawrence W. Young and John Said for Appellant.

Stutsman, Hackett & Nagel for Respondent.

GRIFFIN, J.—On April 3, 1947, plaintiff and respondent Marie Schletewitz, commenced an action for divorce against defendant and appellant Carl Schletewitz, aged 73, alleging extreme cruelty, and on that same day defendant was served with a copy of complaint and summons. He failed to appear, and on May 29, 1947, his default was entered and the action was tried as a default matter. On June 3, 1947, the interlocutory decree was granted. Plaintiff was awarded certain real and personal property and $75 per month support money. On June 11, 1947, defendant gave notice of motion to set aside the decree on the ground that it was entered through mistake, inadvertence, surprise and excusable neglect.

In this connection it is now argued on appeal, as it was in the trial court, that the plaintiff did not advise the court, on the hearing of her case, that she was then and had been living and cohabiting with defendant as husband and wife ever since the action was filed and up to the date of the interlocutory decree, and that therefore she committed a fraud upon the court. On August 27, the motion was heard and on September 2 the court denied it. Defendant concedes the general rule that it is usually a discretionary matter whether such a decree, based upon excusable neglect, should be set aside, but contends that since the evidence conclusively shows that plaintiff committed an act of fraud upon the court by not divulging the true facts in regard to her relationship with her husband at the time she obtained the decree, the court abused its discretion in the matter and the decree, as a matter of law, should have been set aside.

Defendant's evidence shows that plaintiff and defendant were married on December 18, 1937; that after he was served with process on April 3, 1947, plaintiff and defendant continued to live together until May 5, 1947; that she quit sleeping with him because she was told by her attorney that such conduct might affect her divorce proceedings; that her attorney did not inform the court of these facts at the hearing; that on May 29, when she obtained her decree she told defendant she was going to town with a friend to buy some shoes but did not inform him about going to obtain the decree; that she thereafter returned home and got his meals and had frequent prayer meetings together with him until June 12, 1947; that after the service of the complaint plaintiff advised defendant and led him to believe that she did not desire any divorce and that they had become reconciled, and for that reason he obtained no attorney and did not appear in the action.

Plaintiff recites in her affidavit that she did not cohabit with defendant after May 5th, 1947; that she told him she was in ill health and ever since May 29th, 1947, she had locked herself in her own room and slept separate and apart from him; that the reason she occupied the bed with defendant from the date of service of the complaint until May 5, 1947, was because she was fearful of defendant's threats to do her grave bodily injury and to take her life if she did not cohabit with him; that she never advised defendant she did not want a divorce but at all times expressed to him her desire to live separate and apart from him and to continue with the divorce proceedings. She denied generally his allegations as to her

going out in public with him and appearing as "happily married persons" after April 3, 1947. She then alleges that defendant did seek the advice of his attorney in the matter; that said attorney was given a community property settlement agreement purporting to settle the property rights of the parties; that defendant consulted with said attorney as to the property settlement agreement and in reference to the divorce proceedings; that defendant was repeatedly told by plaintiff's attorney to consult with his own attorney; that defendant stated he did not need an attorney; that plaintiff did not obtain the interlocutory decree without the knowledge or consent of defendant but on the contrary defendant was informed both orally and in writing by plaintiff's attorney that the interlocutory decree was going to be taken and that he should consult his attorney; that she was still living at the home, awarded to her in the decree, and that defendant refused to move therefrom; that she never voluntarily had her meals with defendant; that she never cooked for him since the filing of the complaint, never washed his clothes or bed linen; that she had obtained an order to show cause why defendant should not be removed from the premises.

Plaintiff's attorney alleged, in his affidavit, that on April 15, 1947, he prepared a property settlement agreement for the parties; that defendant instructed him to take the agreement to his named attorney; that he did so and that attorney scrutinized it and made several changes therein; that the changes were made and as made were shown to defendant with instructions to take them to his attorney for examination. It is then alleged that on April 9, 1947, plaintiff's attorney addressed a letter to defendant at his home address, and a copy was forwarded to his attorney reciting:

"Dear Sir;

"Your wife, Mrs. Schletewitz, has consulted us in reference to her action filed against you on April 2, 1947. She has informed us that due to the fact that you are unwilling to come to a mutual agreement regarding settlement of the property rights involved, and due to the fact that you refuse to see your attorney, Mr. Aynesworth, she is desirous of our continuing her action for divorce.

"Please be advised that we shall give you a period of five days in which time we shall expect to hear from you. Should you fail to communicate with us within that time we will be compelled to pursue this action against yourself, per the instructions of Mrs. Schletewitz."

Defendant denied the receipt of this letter. There was no showing made by defendant's attorney, Mr. Aynesworth, that the transactions thus alleged did not actually take place.

Upon this evidence the trial court refused to set aside the default and decree. Defendant appealed and cites several cases such as *Rehfuss* v. *Rehfuss*, 169 Cal. 86 [145 P. 1020]; *Smith* v. *Smith*, 64 Cal.App.2d 415 [148 P.2d 868]; *Hambrick* v. *Hambrick*, 77 Cal.App.2d 372 [175 P.2d 269]; *Aldrich* v. *Aldrich*, 203 Cal. 433 [264 P. 754]; *Katz* v. *Karlsson*, 84 Cal. App.2d 469 [191 P.2d 541]; and *Raps* v. *Raps*, 20 Cal.2d 382, 387 [125 P.2d 826]; holding that a very slight showing is required for a court to set aside a default decree in a divorce action and that it is the duty of the court, representing the state, in accordance with the letter and policy of the law, to guard strictly against fraud, collusion, or imposition when the husband or wife seeks to dissolve the bonds of matrimony which bind them together, and that a court should listen more readily to an appeal from an order denying relief than to one granting relief.

As stated before, the main question is whether or not, by the suppression of the fact that plaintiff and defendant were sleeping together as husband and wife, and having sexual relations on occasions, from the time of the filing of the complaint up to and on the day of the hearing, plaintiff was guilty of a fraud practiced upon the court compelling this court to reverse the order of the trial court denying relief. In this connection defendant cites *Chiarodit* v. *Chiarodit*, 218 Cal. 147 [21 P.2d 562], which case cites *McGuinness* v. *Superior Court*, 196 Cal. 222 [237 P. 42, 40 A.L.R. 1110].

The denial of the motion to set aside the decree by reason of defendant's *excusable neglect* seems justified under the evidence for it clearly appears that there was substantial evidence to show that defendant was served with process; that he took those papers to his own attorney; that he participated in attempting to reach a property settlement and was notified by letter that plaintiff intended to proceed with the default judgment. Can it be said, notwithstanding these facts, that plaintiff was, as a matter of law, guilty of a fraud in not revealing to the trial court the undisputed facts in relation to her cohabitation with her husband until May 5, 1947? It would be understandable for a wife to bring an action against her husband for divorce and still continue to live in the same house, but in different rooms, where she had no other place to go and her husband refused to move out.

Such a method of claimed cohabitation may not, in itself, constitute any fraud on the court nor would such a wife necessarily be compelled to disclose such arrangement to the court or could she be charged with fraudulently concealing facts. Having sexual relations with her husband during such a period, without the benefit of other marital or conjugal rights, would not necessarily be a controlling circumstance. See *Hawkins* v. *Hawkins*, 104 Cal.App. 608, 609 [286 P. 747], in which case the court held, quoting from the syllabus:

''The conjugal rights of married persons include the enjoyment of association, sympathy, confidence, domestic happiness, the comforts of dwelling together in the same habitation, eating meals at the same table, and profiting by the joint property rights as well as the intimacies of domestic relations; and in this action, there was no restoration to all marital rights as is required to constitute a consummation of condonation, where there was no claim of a restoration to any marital rights, except the right of cohabitation on a single occasion. . . .

''Condonation of acts of extreme cruelty is not accomplished by sexual intercourse alone, there being no showing of a restoration to all marital rights.''

The case of *Morton* v. *Morton*, 117 Cal. 443 [49 P. 557], is not dissimilar to the facts in the instant case. There plaintiff wife instituted an action for divorce against her husband. The complaint was filed on September 25, and summons served on him on October 14. He failed to appear and on November 14, judgment of divorce was granted. Defendant later moved to set aside the decree on the same grounds here claimed alleging that after the commencement of the action plaintiff and defendant cohabited together as husband and wife until October 14, at which time he left for San Francisco. Plaintiff testified that she lived at the home with the defendant because she ''had no place to go'' and did not want to leave her personal effects to his mercy because he had threatened to destroy them if she ever left him; that she never agreed to condone his matrimonial offenses nor to forgive him; that she endured defendant because she could not help herself, until she had an opportunity of safely taking other action. The court denied defendant's motion. The order was affirmed on appeal. The court said:

''The point that plaintiff must be held to have condoned defendant's offenses, because she lived and cohabited with him after the action was commenced and until the summons was

served, cannot be sustained. In an action for divorce on the ground of cruelty there can be no condonation unless there is a reconciliation between the parties, a remission of the matrimonial offenses and an express agreement to condone . . . 'Where the cause of divorce consists of a course of offensive conduct, or arises, in cases of cruelty, from successive acts of ill-treatment which may, aggregately, constitute the offense, cohabitation, or passive endurance, or conjugal kindness shall not be evidence of condonation of any of the acts constituting such cause, unless accompanied by an express agreement to condone.' " (Citing Civ. Code, § 118.)

In *Gump* v. *Gump*, 42 Cal.App.2d 64 [108 P.2d 21]; and *McGuinness* v. *Superior Court, supra,* relied upon by defendant, upon conflicting evidence as to whether or not there was a reconciliation, the trial courts found that there was, as a matter of fact, a reconciliation. On appeal it was held that the evidence supported such a finding and that an appellate court could not hold to the contrary, as a matter of law. In the instant case, had the trial court found that a reconciliation had been effected and that the procurement of the interlocutory decree was in accordance with defendant's claim, we would have no difficulty. Here we have an opposite finding with which to contend. ■ It is plaintiff's claim that, by her actions, she never intended to effect a reconciliation or to lull defendant into a false sense of security, but that she did not move out of the house and did not refuse his marital demands for the reason that she feared him and was afraid that he might carry out his threat to do her great bodily injury; that her actions in this respect were not "voluntary"; that as soon as the decree was granted she locked herself in her own room and abided the former advice of her attorneys to desist from such marital relationship, even though involuntary.

Although her statement pertaining to the reasons she submitted to this relationship may be questioned, it still remained a question of fact for the trial court to determine. A full hearing of that question, and whether or not the court had been deceived by her withholding such information at the time the interlocutory decree was granted, were presented to and determined by the trial court. That court was confronted with the conflict in the evidence, the demeanor of the parties on the witness stand, and it had a right to believe plaintiff's testimony. A clear abuse of discretion does not

appear. (*McDonald* v. *McDonald*, 173 Cal. 175, 177 [159 P. 426]; *Morton* v. *Morton*, 117 Cal. 443 [49 P. 557]; *Keller* v. *Keller*, 122 Cal.App. 712 [10 P.2d 541]; *Bohnert* v. *Bohnert*, 95 Cal. 444 [30 P. 590]; *Dean* v. *Dean*, 77 Cal.App.2d 98 [174 P.2d 705].)

Order affirmed.

Barnard, P. J., and Marks, J., concurred.