[Civ. No. 13835.   First Dist., Div. Two.   Mar. 31, 1949.]

VIOLET A. KELLER, Appellant, v. JULIUS M. KELLER,
Respondent.

Lucille F. Athearn for Appellant.

J. Bruce Fratis for Respondent.

GOODELL, J.—This is an appeal from an order denying appellant's motion to vacate an interlocutory judgment of divorce which had been entered in her favor.

The parties were married in Honolulu in December, 1943, while respondent was stationed there as an army officer. Appellant owned and operated a children's nursery and also owned a piece of residential property in Honolulu and certain personal property. Respondent was transferred to San Francisco in 1945 and several months later, after appellant had sold her business and real estate, she joined him in San Francisco, where they settled. These sales realized about $30,000 and out of the proceeds investments were made in two pieces of San Francisco real estate, one a house of two flats on Clay Street, the other a home on San Felipe Avenue.

On February 21, 1947, the parties separated and on March 1, appellant filed suit for separate maintenance. Respondent was ordered to pay $200 a month as temporary support, $250 to appellant's attorney and $150 for costs. Respondent shortly before had made quitclaim deeds to appellant of the two parcels of San Francisco property, and soon after she filed suit he sued her to set aside these two deeds and recorded a lis pendens.

While the separate maintenance suit was pending appellant changed lawyers and her new attorney received a proposal from respondent's attorney for a settlement of the property matters, and that the action be changed from one for separate maintenance to one for divorce. A property settlement was entered into on May 22, 1947, the complaint was so amended, and the divorce case was tried without contest. On June 7, 1947, an interlocutory judgment was entered in appellant's favor incorporating the terms of the property settlement, which were that respondent would pay appellant $100 a month for 14 months.

Respondent had paid only $75 on the temporary support order, which sum he had borrowed. When the formal settlement agreement was made a separate agreement was signed by the parties which admitted respondent's arrearages of $475 for temporary alimony, $250 attorney fees and $150 costs, and that he was indebted to appellant for the amounts expended and to be expended by her for attorney fees and court costs in the litigation then pending. Respondent therein

agreed to pay appellant $1,200 in cash, and she therein acknowledged that such payment would release him from the several precedent and current obligations so admitted. This $1,200 was paid when the interlocutory judgment was entered, and it was raised by respondent borrowing $1,000 from his parents and $200 on his insurance. It was also part of the settlement that respondent would dismiss (with prejudice) the suit which he had brought to set aside the quitclaim deeds. This he did.

A few days before the statutory six months would have run appellant moved under section 473, Code of Civil Procedure, to set aside her interlocutory judgment of divorce. Those proceedings were brought by her present counsel, who did not represent her in her divorce case. After a full hearing the motion was denied.

█ The law is well settled that an application for relief under section 473 is addressed to the sound discretion of the trial court, and that an appellate court will not interfere with the exercise of such discretion unless there is a clear showing of an abuse thereof. (*Morton* v. *Morton,* 117 Cal. 443, 446 [49 P. 557] ; *Clark* v. *Clark,* 56 Cal.App.2d 324, 325 [132 P.2d 527] ; *Estate of Rabinowitz,* 67 Cal.App.2d 840, 841 [155 P.2d 915] ; *Wetzel* v. *Wetzel,* 71 Cal.App.2d 168, 170 [162 P.2d 299] ; *Trujillo* v. *Trujillo,* 71 Cal.App.2d 257, 260 [162 P.2d 640].)

█ Section 473 provides for relief "from a judgment, order, or other proceeding taken against" a party. Assuming that the interlocutory judgment in this case was *taken against* appellant,—although, on the contrary, it was in her favor— there was no showing of "mistake, inadvertence, surprise or excusable neglect." The divorce case was tried on respondent's, not appellant's, default, after the amendment had been deliberately made and the settlement deliberately reached, based on consultations by appellant not only with her attorney but with at least one family friend (as in *Clark* v. *Clark, supra*) who was a business man, and with their advice that it was the thing to do. At the divorce trial the judge, after developing the fact that appellant had "entered into a property settlement with the defendant covering all . . . community property" asked her "And you are satisfied with that agreement?" to which she answered "Yes." On the statutory grounds quoted above, taken by themselves, no sufficient showing was made.

The courts, however, on motions under section 473, seem to have gone into broader questions. The other grounds of the motion are fraud, coercion and duress. The coercion relied on is economic pressure claimed to have been exerted by respondent by taking advantage of appellant's straitened circumstances during March, April, May and June when the case was pending.

Appellant contends that the evidence shows beyond dispute that by such economic coercion she was forced into amending her complaint and that this was a fraud on the court, making it mandatory that the interlocutory judgment be set aside, relying on *Lake* v. *Lake,* 124 App.Div. 89 [108 N.Y.S. 964]. She claims that during those four months she was practically indigent, was threatened with losing her property, and had been forced to borrow money from friends for living expenses and that respondent when he offered her the $1,200 in cash, the dismissal of his suit, and $100 a month for 14 months, if she would amend her complaint and obtain a divorce, used her financial distress as a leverage.

The only question presented for decision is whether the court abused its discretion in denying the motion.

There is ample evidence that from the time respondent left Honolulu until the separation, a period of about a year and a half, appellant advanced considerable money to him from her own funds, including money used for the furnishing of his office, which advances were never repaid. The record shows that during that period, and up to the time of the hearing, respondent's earnings were inconsiderable. He testified that his income tax return for the year shows net earnings ''of a little better than a thousand dollars.'' It was for this reason, respondent claims, that he was unable to make the payments initially ordered by the court. His ability or inability to make these payments was pertinent to the issue presented on the motion only insofar as it bore on the possibility that he had in fact the ability to make the payments, but had wilfully withheld them as a weapon to force appellant to accept his terms. Respondent's testimony respecting his small earnings was not contradicted, and appellant admitted that she had no way of questioning his figures.

As to whether appellant was coerced into amending the complaint, the attorney who represented her on the settlement testified (privilege having been waived) that when he first became her attorney, *and before the amendment had been proposed by respondent's attorney,* he submitted reasons to

her why a divorce would be preferable, and questioned her as to whether she wanted to adhere to separate maintenance. In that connection he asked her whether she was inclined to a reconciliation and her reply was in the negative; "that she thought that she could get more out of him by bringing a suit for separate maintenance," and "she didn't want to let him be free to do as he pleased." He added: "And I think she was reluctant to amend her complaint and get a divorce, but that she did so because she didn't care one way or another whether she was divorced from him, and she wanted to get her property, and she wanted to get as much in return of the money which she felt she had wasted in this marriage on him, as she could. And her expression to me, on more than one occasion, was to get all I could." The court asked him whether he urged her to amend, and he answered "Yes. I thought that that was the best thing for her to do. She had all of her property tied up." He also testified that when the amendment was proposed by respondent's attorney, "she agreed that if that was the quickest way to get her money, that the thing to do was to go ahead and amend the complaint."

The evidence is undisputed that from the time of the separation to mid-June appellant borrowed $2,300 (made up of cash and checks, as needed) from a friend of both spouses. Appellant used part of this money to buy furniture so as to rent the Clay Street property furnished, and thus get a higher rental; part of it to keep up payments on the Clay Street and San Felipe Avenue properties; part of it for living expenses, doctor's bills, schooling for her son (by a former marriage), payments on an automobile loan; expenses connected with the litigation and other necessary outlays. All this $2,300 loan has been repaid.

The friend who lent the $2,300 testified that "There was a tremendous desire on the part of—justifiably so, possibly—Mrs. Keller to wreak vengeance upon her husband . . . there was a most desperate desire that brooked no interference whatsoever . . ." When asked as to his conversation with appellant concerning the settlement agreement, he testified that she said " 'I am going to get all my money back . . . I don't care how much he suffers, let him go to jail, he has made me suffer.' And language in the vein of that type." He testified that he and appellant discussed the terms of the agreement quite thoroughly; that they had quite a number of conversations about it; that she indicated finally that she was going to sign it; that she seemed quite able to coherently and

intelligently discuss the provisions of the agreement with him, and understood the nature and extent of the property and of the agreement. Appellant testified that this witness had advised her to take the settlement and had said ''that is all I would ever get out of Keller.''

It is undisputed that from March 1 to mid-June, appellant had in addition to the $2,300, $450 in rentals from Clay Street and $450 which she earned doing secretarial work. She admitted that during that period she had approximately $1,300 to live on after deducting monthly fixed charges and payments. She admitted also that since the settlement she had sold the San Felipe Avenue property at the price of $17,000 and the Clay Street property at the price of $26,000.

On the question whether the filing of respondent's suit to set aside the deeds was designed as leverage to force appellant to his terms, it appears without contradiction that early in the separate maintenance litigation respondent's counsel stipulated in open court and by a letter to appellant's then attorney that in case she had a sale of either piece of property in prospect respondent would cooperate so that the sales could go through provided the proceeds were impounded to abide the court's judgment as to whether respondent was entitled to any part of the proceeds.

It is clear from uncontradicted evidence that at the time of the hearing respondent had made no payments at all on account of the $1,400 he had agreed to pay in 14 monthly installments, but as this agreement was part of the settlement itself it can have no bearing on the question of claimed pressure exerted *before* the settlement.

Respondent's failure to pay anything beyond $75 is another matter and it has been already discussed. However, appellant's attorney at the time of the settlement testified at the hearing that he had satisfied himself respecting respondent's resources as of that time. He said ''But I decided he didn't have it'' (the money). Moreover, the $1,200 paid at the time of the settlement was expressly recognized in the written agreement as paying off respondent's obligations on the initial court order for temporary support, attorney fees and costs.

The court just before ruling remarked that there was no question that appellant had sufficient grounds for divorce or separate maintenance. The record shows that clearly.

The court also asked the appellant: ''Then the only purpose is to have the matter restored in order to proceed only with the separate maintenance suit . . . rather than the divorce?''

and she answered "Yes . . . I don't see why I should have a divorce; I have been a good wife."

It is clear from the record, which we have summarized at considerable length, that there was ample evidence to support the order and that there was no abuse of discretion in denying the motion.

The order is affirmed.

Nourse, P. J., and Dooling, J., concurred.