[Civ. No. 18674.   Second Dist., Div. Two.   Mar. 27, 1953.]

MARGARET C. PAULEKAS, Respondent, v. VITO A. PAULEKAS, Appellant.

Vito A. Paulekas, in pro. per., for Appellant.

Mendel H. Lieberman for Respondent.

MOORE, P. J.—In this action for separate maintenance, appellant was by the judgment required to pay monthly to his wife for the support of herself and two children $175; also, bills for their medical and dental care. Additionally, she was awarded the home, the movable property where the couple had lived and the savings bank accounts in her name.

On receipt of notice of the decree, appellant moved promptly under section 473 of the Code of Civil Procedure to set aside the several defaults that had been entered against him and the judgment on the grounds of his inadvertence, surprise and excusable neglect. He submitted with his motion an answer and a cross-complaint and now comments that his "affidavit reveals that he has a good and sufficient defense to plaintiff's cause of action and . . . a good and sufficient cause of action for divorce in his own right." In his affidavit he averred that he and Mr. Lieberman, his wife's attorney, were close friends; that he "relied on" that attorney to protect appellant's interests; that all papers directed to him were served in the attorney's office and with one exception by the attorney; that the latter never told appellant at any time the action had been changed from a divorce suit to an action for separate maintenance; that appellant did not know the difference between a cause for divorce and one for separate maintenance until after the decree had been entered and at all times thought he was being sued for divorce; that the attorney never explained to him that he was required to file an answer. He averred that he did not consult an attorney until 12 days after the judgment but at all times relied upon Mr. Lieberman "as my friend to protect my interests"; that on February 27, 1950, he appeared in court when he was ordered to make certain payments; that Lieberman then told him there would be a subsequent trial of which appellant would be notified, but the attorney did not explain that appellant was required to file an answer; that "I relied upon Lieberman's friendship to protect me." He sets forth that on April 3, 1950, at Lieberman's office he was served with "amended summons and amended complaint" but nothing was said to the effect that this changed the divorce action to one for maintenance. He cites the salutation, "Dear Vito" and the familiarity of

subscribing his communication "Mendel," as proof of the friendship on which he was entitled to rely.

However, the averments of appellant were on all material points either controverted or explained by the affidavits of Mr. Lieberman and of Mrs. Paulekas. He was told · after the first hearing that Mr. Lieberman would set the case for trial and if the judge believed respondent, she would obtain judgment; "you won't have a right to do or say anything because you are letting Margaret take judgment without a contest." The averments continue: appellant is "exceptionally intelligent, clever, keen, inquiring and analytical; also he is suspicious. He read the complaint promptly on receipt of it; said the house, car, furnishings and bank account go to Margaret; they are hers." He was told that if he wished a trial he must file an answer within 10 days or get a lawyer to do so. He replied that he preferred not to contest the matter, but "won't pay more than I can afford to pay, that's all. . . . When I can pay more, I will. And when I can't, I won't."

When Mr. Lieberman told him that if he desired to contest the case he should file an answer, appellant stated his preference for the court to determine the amount Margaret should be paid. Therefore, they both attended the hearing on February 27, 1950, and thereafter Lieberman told him that since appellant was not contesting the case he would not be privileged to say a word at the trial.

On March 28, 1950, respondent had her counsel file an amended complaint demanding separate maintenance only. By telephone the lawyer requested appellant to call to be served with the new pleading and save some expense. Pursuant to promise appellant called on April 3d. At the time service was made, Lieberman stated that the original complaint was for divorce but that the amended pleading was different as shown by the prayer. The lawyer then instructed appellant to read the entire amended complaint to see the differences and to "answer within the next ten days if you want to have a contest and a trial." Default was duly entered on April 17th and on the day fixed for trial the case went off calendar because of the birth of the second child. That event necessitated the filing of a supplemental complaint. The attorney then advised appellant that the latter was not required to be at any court session until he had been served with notice of the decree. The supplemental complaint was forwarded to appellant on June 1, 1950. Subsequently, he called at Lieberman's

office and was served with the latest pleading. His default on the supplemental complaint having been duly entered, a trial was had on August 2, 1950. Six days later, appellant called on Lieberman and was served with a copy of the decree. He thereupon read the decree and stated that he had no questions; that he understood it fully but ''of course'' he would not make these payments; that if he paid as much as he could ''they can't do anything to me.'' He expressed no ''anger, surprise, doubt or bewilderment.'' He thanked the lawyer ''for everything.''

From the averments of the supporting affidavits of respondent which were adopted as the facts, it cannot reasonably be said that the court abused its discretion. Such documents, if believed, served to establish that appellant knew the *amended complaint asked for separate maintenance only* and not for divorce. Not only did he read the document on April 3, 1950, but thereafter he had it in his possession for four months before the matter was tried. From the chronological table of events on the margin* it will be observed that, from the date of the service of the amended complaint demanding support and maintenance to the day judgment was rendered, 121 days elapsed. During that period appellant met with his wife's lawyer and was, in the latter's office, served with official copies of her demands. For one of the quickness of perception and of the ready understanding of events that characterized appellant, it cannot be said that the trial court, as a matter of law, abused its discretion.

By what standard of ethics or of logic could appellant have relied upon the opposing attorney ''to protect'' his interests? Mr. Lieberman's duty was to obtain a judgment as speedily as the circumstances would allow; to get for his client the maximum advantage consistent with the circumstances of the parties. Appellant knew this and if he had one thought that the lawyer would not do so, all the more reason why he should have been suspicious. Nothing is shown by appellant that indicates he was induced by the lawyer not to file an answer and a cross-complaint. It is not proved that he relied upon

---

*Feb.    16, 1950—summons served.
March   7, 1950—default entered.
March  23, 1950—off calendar.
April    3, 1950—amended complaint served.
April  17, 1950—default entered.
May     2, 1950—cause off calendar, second child born.
June   30, 1950—service of supplemental complaint.
July.  14, 1950—default entered.
August 2, 1950—trial.

Lieberman to give legal service to him while representing the wife. Whenever he called on Lieberman it was to see the lawyer doing some service for respondent. It appears that appellant seized upon his ''friendship'' to bring the controversy to a close with no more cost to himself than the payment of his wife's expense of the litigation. He induced himself to believe he would get more advantages than he was paying for and was disappointed.

In the trial of an issue on ex parte affidavits, those favoring the demands of the respondent establish the facts declared and also such facts as might reasonably have been inferred therefrom. (*Doak* v. *Bruson,* 152 Cal. 17, 19 [91 P. 1001]; *Kettelle* v. *Kettelle,* 110 Cal.App. 310, 313 [294 P. 453].)  The fact that the court believed the averments of respondent and rejected those of appellant is shown by the decision which, in turn, demonstrates there was no abuse of discretion. (*Morton* v. *Morton,* 117 Cal. 443, 446 [49 P. 557].)  Where a liberal amount of time has elapsed from the time of the service of summons the defendant cannot maintain that he was guilty of excusable neglect in not defending the action. (*Mills* v. *Mills,* 101 Cal.App. 248, 251 [281 P. 707].)  If he did not read the amended complaint, as he asserts, he was grossly culpable; if he read it, as the court found, he swore falsely. In either event it cannot be said the court acted capriciously, arbitrarily or corruptly in denying the motion.

The authorities cited by appellant (*Garcia* v. *Garcia,* 105 Cal.App.2d 289 [233 P.2d 23]; *Mulkey* v. *Mulkey,* 100 Cal. 91 [34 P. 621], and *Karlein* v. *Karlein,* 103 Cal.App.2d 496 [229 P.2d 831]) are readily distinguishable by their facts.

Appellant seeks to upset the judgment on the ground that it is not justified by the evidence. The decree in this action is final and is not open to attack in a proceeding to set aside the judgment under section 473, *supra.*  Where a default judgment is on appeal, the reviewing court must indulge all reasonable presumptions and intendments in favor of the judgment. (*Kreling* v. *McMullen,* 158 Cal. 433, 434 [111 P. 252].)

The decree of separate maintenance and the order denying defendant's motion to set aside defaults are affirmed.

McComb, J., and Fox, J., concurred.