[Civ. No. 23769. Second Dist., Div. One. Dec. 28, 1959.]

GRACE GARCIA, Respondent, v. FELIX GALLO et al.,
Appellants.

Bolton, Groff & Dunne and John S. Bolton for Appellants.

Erb, French & Picone and Martin C. Calaway for Respondent.

LILLIE, J.—An action for damages arising out of an automobile collision on February 3, 1957, was filed December 30, 1957, against Felix and Braullio C. Gallo. No appearance having been made by them, their default was entered March 3, 1958, and after a hearing, judgment for $2,304.50 was entered against them on April 4, 1958. On August 27, 1958, defendants filed notice of motion to set aside default and, in support thereof, two affidavits executed by John L. Richardson, claims attorney for Financial Indemnity Company, and Braullio and Felix Gallo jointly. In opposition, plaintiff filed the affidavit of Martin C. Calaway. It is from the order denying the motion defendants appeal.

Although an order denying a motion to vacate a default judgment will not be reversed in the absence of a clear showing of abuse of discretion by the trial court (*Warren* v. *Warren,* 120 Cal.App.2d 396 [261 P.2d 309]), and the reviewing court must indulge all reasonable presumptions and intendments in favor of a default judgment (*Kreling* v. *McMullen,* 158 Cal. 433 [111 P. 252]; *Paulekas* v. *Paulekas,* 117 Cal.App.2d 73 [254 P.2d 941]), on the theory that a case should be heard on its merits whenever possible, such an order is more carefully scanned on appeal than one granting relief (*Brill* v. *Fox,* 211 Cal. 739 [297 P. 25]; *Karlein* v. *Karlein,* 103 Cal.App.2d 496 [229 P.2d 831]). However, in reviewing the evidence submitted to the trial court by way of affidavits, it is well settled that those favoring the position of the respondent establish the facts declared and also such facts as might reasonably have been inferred therefrom (*Doak* v.

*Bruson,* 152 Cal. 17 [91 P. 1001]; *Paulekas* v. *Paulekas,* 117 Cal.App.2d 73 [254 P.2d 941]); and we are bound to disregard any statements in appellants' affidavits contradictory to those in respondent's, and will not disturb the trial court's determination of any controverted facts, if a substantial conflict exists (*Daniels* v. *Pitman,* 123 Cal.App.2d 345 [266 P.2d 820]; *Zuver* v. *General Development Co.,* 136 Cal.App. 411 [28 P.2d 939]); for, the rule for resolving conflicts in affidavits is the same as that governing oral testimony and it is primarily for the lower court to determine the credibility of the affiants and the weight of their averments (*Zuver* v. *General Development Co.,* 136 Cal.App. 411 [28 P.2d 939]; *Estate of McCarthy,* 23 Cal.App.2d 398 [73 P.2d 910]).

 The events leading up to the entry of the default judgment and motion to vacate the same, are herein set forth with these rules in mind. On February 3, 1957, plaintiff's automobile was struck from the rear by one owned by Braullio and driven by his minor son, Felix. The insurance policy issued by the Financial Indemnity Company, covering Braullio's automobile, contained a clause excluding from coverage its use by one under the age of 25, which clause at that time was valid. Braullio reported the accident to the carrier February 13. Six days later, on February 19, the California Supreme Court changed the law relative to such clauses, holding them to be unenforceable. (*Wildman* v. *Government Employees' Insurance Co.,* 48 Cal.2d 31 [307 P.2d 359].) Within a month plaintiff retained Martin C. Calaway to represent her, who immediately wrote to Felix making a claim on her behalf; and on March 7 directed a letter to the insurance company in care of its adjuster advising that he represented plaintiff, that the policy issued by it covered Braullio's car, and they would look to defendants and their carrier for damages. In answer, the adjuster, on the letterhead of the company, wrote Calaway on March 12, 1957, advising that due to a policy violation (referring to the clause excluding coverage) coverage was being denied Braullio by the Financial Indemnity Company.

On July 26, 1957, Braullio wrote a letter to plaintiff indicating he had contacted Attorney John F. Sheffield to represent him and had been advised to ask her for a financial responsibility release that he might retain his license and plates. Calaway responded on behalf of plaintiff by a letter directed to Sheffield advising him that his client would not execute such a release. Then, on September 4, 1957, Sheffield wrote to Calaway stating that he was attorney for the Gallos (referring

to Braullio as "my client") and that Braullio had been unaware of any limitation in his insurance policy. Thereafter, to December 30, 1957, Calaway and Sheffield engaged in a series of telephone conversations in an attempt to settle the case between plaintiff and defendants but, no offer having been made, Calaway finally filed a complaint and served the same on them December 30, 1957. Defendants promptly presented the pleading to the Financial Indemnity Company and demanded it appear for and represent them. The company refused. Calaway thereafter waited for a period of two months for defendants to appear, and hearing nothing from them, requested entry of their default on February 28, 1958; then telephoned Sheffield informing him of the entry of default and of his intention to later appear in court for entry of judgment thereon. In anticipation thereof, on March 17, Calaway sent his investigator to defendants' home to obtain information for the preparation of a military affidavit. Upon being told the inquiry was for the court proceeding resulting from the accident, Braullio told him they had retained a lawyer and did not want to discuss it unless he was present.

Approximately two weeks thereafter, on April 4, 1958, plaintiff appeared in court and judgment was entered; later, on the same day, Calaway wrote Sheffield advising him that judgment had been entered and requesting a copy of defendants' insurance policy to determine if proceedings could be had against Financial Indemnity Company under the Insurance Code to obtain payment thereof. On April 21, Sheffield acknowledged receipt of the letter and enclosed a copy of the policy.

Ten days later, on May 1, Sheffield telephoned Calaway's office to discuss the matter; Calaway was not in but Sheffield left word that he intended to discuss the case of *Wildman* v. *Government Employees' Insurance Co., supra,* 48 Cal.2d 31, with officials of the Financial Indemnity Company and advise them that, unless it indemnified his client for the judgment taken against him the company would be reported to the Insurance Commissioner.

Section 473, Code of Civil Procedure, provides that "the court may, upon such terms as may be just, relieve a party or his legal representative from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect." Appellants base their claim of an abuse of the trial court's discretion in denying the motion upon two affidavits executed by them and one Richardson,

both of which we find to be insufficient to support the relief requested.

Richardson, claims attorney for Financial Indemnity Company, alleged in his affidavit that, upon being notified of the accident by defendants, his predecessor, James V. Daley, interpreted as valid the standard endorsement excluding coverage of the automobile if driven by one under 25 years, determined Felix' operation of Braullio's automobile to be a violation of this provision and refused to entertain coverage and defend the Gallos—both then and when they later delivered the complaint served upon them and demanded the company appear and represent them; that in February of 1957 the case of *Wildman* v. *Government Employees' Insurance Co., supra,* 48 Cal.2d 31, contrary to the law then in effect, established the unenforcibility of the endorsement in question; and that he, who succeeded Daley, consulted attorneys for the insurance company, Bolton, Groff and Dunne, who advised him of the change in the law as the result of the Wildman decision and the company should defend the insured. Richardson further alleged that he first learned of the default judgment taken against the defendants on May 23, 1958, and immediately retained Attorneys Bolton, Groff and Dunne to file the motion to set aside the judgment; and that by reason of Daley's death he was pressed with business duties and a caseload which "prevented him from becoming immediately aware and acquainted with the captioned matter aforesaid, and the default and judgment aforesaid."

The Gallos, in their affidavit, swore that they promptly tendered summons and complaint to the insurance company and demanded a defense; that they had no means or ability to finance an appearance or retain counsel to advise them; that the insurance company denied coverage, they relied upon the company to appear and defend and in reliance thereon permitted default to be entered against them; that they promptly notified the company of the entry of default and judgment; and that they had consulted their attorney, John F. Sheffield, for the purpose of determining their rights in this matter.

The two affidavits filed in support of the motion, and relied upon by appellants, are vague, incomplete as to material dates and other matters, lack chronological continuity and are replete with omissions and inconsistencies, all of which well justified the trial judge in accepting the plaintiff's version of what occurred, thereby eliminating any ground for relief under section 473. Referring first to the Gallos, the only

named defendants, it is firmly established that at all times since 10 days after the accident they were in contact with the insurance company; that they promptly notified it of all proceedings taken against them; and that when, many months before suit was filed, they were denied coverage and representation by the company they retained private counsel (John F. Sheffield) who thereafter continuously represented them—from July, 1957, to the institution of suit, during the two months thereafter until entry of default and another month until entry of judgment, and up to and including the hearing on the motion to set aside the default on September 15, 1958, in which proceeding he appeared as their attorney of record. Sheffield, who represented the Gallos for well over a year and was aware of the Wildman decision, knew the insurance company had denied his clients coverage and had refused to defend them; had advised Braullio prior to September 4, 1957 of the limitation in his policy and to obtain a financial responsibility release from plaintiff, and failing that, in light of the insurance company's refusal to represent them, he attempted on behalf of his clients to negotiate a settlement with plaintiff's counsel. Upon failure of negotiations and after suit was filed and served on defendants, Sheffield was immediately advised by plaintiff's counsel of the entry of default and warned in advance that judgment would be entered against his clients, was notified on the day judgment was entered; and shortly thereafter he sent plaintiff's counsel a copy of his client's insurance policy to aid him in proceeding against the insurance company to collect the judgment, and then later contacted his office to discuss the case and what action he contemplated against the insurance company. All of the affidavits disclose an awareness by defendants of what was being done by plaintiff, her counsel, the insurance company and their own counsel at all stages, from the day the accident occurred to the day their motion was heard and denied; that throughout the entire time they were fairly represented by competent counsel who was advised by opposing counsel, sometimes in advance, of all proceedings had and to be taken against them. John F. Sheffield, significantly enough, filed no affidavit on behalf of defendants; and the Gallos swore to very little, the truth of much of which could easily be doubted. For instance, there is their averment that they had no means or ability to retain counsel to advise them, when the overwhelming evidence establishes that throughout the entire matter they had been continuously represented and advised by private counsel; also,

their representation that "they relied upon Financial Indemnity Company to appear and defend and in reliance thereon they permitted the default to be entered against them," when Richardson in his affidavit swears that Braullio at all times knew and understood the terms and provisions of his policy, that upon notification of the accident on February 13, the company advised him his policy did not cover his car and it would not defend him, and that when he promptly delivered to the company the summons and complaint served on him December 30, 1957, and demanded it defend him, the company refused to do so. The record shows that from July, 1957, defendants were advised by their own counsel upon whom they relied, which completely negates any reliance on the insurance company; too, even had they actually relied upon the company, such reliance would not have been reasonable under the circumstances.

The conduct of the Gallos appears to have been intentional and the default occurred as a result of a deliberate failure of the Gallos and their counsel, fully advised in the premises, to act, which does not justify relief under section 473 (*Williams* v. *Reed,* 43 Cal.App. 425 [185 P. 515]). Since the insurance company, even though unjustified, unequivocally refused to defend them, perhaps defendants preferred, rather than appear, to permit the default to be entered and later proceed against it under the Insurance Code to force payment of the judgment. ■■ But whatever motivated their failure to defend and subsequently caused their change of mind, relief under section 473 is not now available to them (*Elms* v. *Elms,* 72 Cal.App.2d 508 [164 P.2d 936]; *Wilterdink* v. *Wilterdink,* 81 Cal.App.2d 526 [184 P.2d 527]; *Baratti* v. *Baratti,* 109 Cal.App.2d 917 [242 P.2d 22]); for under that section the court may not set aside a default judgment regularly entered except on the grounds listed therein. (*Redding etc. Co.* v. *National Surety Co.,* 18 Cal.App. 488 [123 P. 544].) ■■ We find no abuse of discretion in the implied finding of the lower court that neither the Gallos nor their counsel, John Sheffield, permitted the default to be entered because of "inadvertence, mistake, surprise or excusable neglect." Two months elapsed from the date of service of the complaint until entry of default and another month from then until judgment was entered, during which time Sheffield was fully advised and once warned in advance of the judgment to be taken against his clients. ■■ There was no "surprise" under the circumstances (*Paulekas* v. *Paulekas,*

117 Cal.App.2d 73 [254 P.2d 941]). This is not a situation in which "a party is unexpectedly placed in a situation to his injury without fault or negligence of his own and against which ordinary prudence could not have guarded" (*Elms* v. *Elms*, 72 Cal.App.2d 508, 513 [164 P.2d 936]); nor can it be said in view of the acts of plaintiff's counsel that there was an attempt to take advantage of his adversary in any way.

Therefore, if relief is justified it must be for the default of the insurance company lawyers. If their acts and omissions are to be considered, it must be on the theory either —that the Gallos reasonably and in good faith relied upon a promise by them to defend the action (*Sofuye* v. *Pieters-Wheeler Seed Co.*, 62 Cal.App. 198 [216 P. 990]; *Newton* v. *DeArmond*, 60 Cal.App. 231 [212 P. 630]) which is not borne out by the record—or that they constitute "a party or his legal representative" under section 473. Surely the carrier is not "a party"; but to deny that its counsel may not be defendants' "legal representative" is to ignore the common and accepted practice of insurance companies under their contracts to provide representation to an insured when sued. It can hardly be argued that had the insurance company submitted to defendants' demand for representation, they would not have been represented throughout all proceedings by the carrier's counsel; or had the trial court granted the motion an attorney supplied by the insurance company would not be defending them on a new trial. However, it is interesting to note that on the one hand, Richardson, claims attorney for the insurance company, contends that he (and his predecessor) from the very beginning denied carrier representation to defendants and has never represented them; and, on the other, in effect seeks to establish himself as defendants' "legal representative" for the present purpose of seeking their relief from his default.

Whether the insurance company's counsel is the "legal representative" of defendants as to permit our consideration of the merits of their motion is of little consequence at this point, for the affidavits relied upon by them are wholly insufficient to justify any finding of "mistake, inadvertence, surprise or excusable neglect" on his part. ▪ The burden of proving grounds for relief under section 473 was upon the defendants in the lower court and they were required to establish their claim by a preponderance of the evidence (*Bruskey* v. *Bruskey*, 4 Cal.App.2d 472 [41 P.2d 203]; *Weinberger* v. *Manning*, 50 Cal.App.2d 494 [123 P.2d 531]); and the fact that the trial court believed the averments of

plaintiff's affidavit and rejected those of defendants' is reflected in its decision which, in turn, demonstrates there was no abuse of discretion (*Morton* v. *Morton,* 117 Cal. 443 [49 P. 557] ; *Paulekas* v. *Paulekas,* 117 Cal.App.2d 73 [254 P.2d 941]).

Although Richardson has professed ignorance of the change in the law due to the Wildman decision, John Bolton, defendants' present legal representative and attorney of record and counsel for Fidelity Indemnity Company, has always been aware of the Wildman case and its effect on the law regulating the duties of the insurance company under the policy. There was no default on his part, nor does he or anyone on his behalf so claim. If it exists, the default must be that of Richardson—and his own affidavit is not sufficient upon which to base any finding to justify relief under section 473. There is nothing in the record to show that Richardson and Daley were not competent lawyers; but Richardson claims that he was "surprised" by the change in the law resulting from the Wildman decision and that Daley's death so pressed him with additional work he did not become immediately acquainted with the within litigation and the default. That this situation does not fall in that class of cases excusing a "mistake of law" based upon surprise of a change therein is manifest in the record. The Gallos advised the insurance company of the accident on February 13, 1957, at which time the endorsement was valid; but only six days later on February 19, the Supreme Court in the Wildman case held such endorsements unenforceable. On March 7, plaintiff's counsel wrote the insurance company notifying it that its policy covered Braullio's car and that they were looking to the carrier for damages; and on March 12, almost one month after the change in the law through the Wildman decision and in the face of counsel's advice that the policy insured Braullio's automobile, the insurance company advised plaintiff's counsel that because of the endorsement it was denying coverage. The change in the law due to the Wildman case actually occurred 10 months before suit was instituted against the insured, 12 months before default was entered, 13 months before judgment was rendered, and 18 months before the motion was made. The time element alone appears to render ineffective any claim that the law changed to Richardson's "surprise." In addition, he offered nothing by way of affidavit to the trial court to show why he, a lawyer specializing in insurance law and claims attorney for an insurance com-

pany during all this time, had not become aware of a decision so seriously affecting his company's business and its rights and duties under its policies, unless the excuse that his predecessor died and he was busy with an increased caseload may be considered. However, we discount that excuse in this connection for we read his affidavit to mean that the press of business due to Daley's demise was related to his failure to become acquainted with the lawsuit and the matter out of which it arose and to discover the default. In any event, there was little or nothing before the trial court to support such an excuse. Richardson failed to advise the court—when Daley died (although relying heavily upon this fact), why neither he nor Daley was aware of the Wildman decision, what date in February the case was decided, when he took over Daley's work, including the instant matter, when he first discovered the change in the law, when he consulted Bolton who advised him thereof, why he did not immediately thereafter communicate with the Gallos and advise them the insurance company would defend them, and many other explanatory matters. Entirely inconsistent, too, with his sworn statement of the position of the insurance company continuously denying coverage and any financial responsibility for the accident is Richardson's allegation under oath that prior to the filing of the action plaintiff was willing to settle her claim with the company for $500, and the inference he expected the court to draw therefrom.

What is an excusable mistake or ignorance of the law is mainly factual and no reliable test is available. In *Security Truck Line* v. *City of Monterey,* 117 Cal.App.2d 441 [256 P.2d 366, 257 P.2d 755], where mistake or ignorance of the law was relied upon (it further appearing that plaintiff had warned counsel it would take default), the court pointed out that the legal problem involved was not complex or debatable and a solution was readily ascertainable. Affirming the order denying relief the court stated at page 445: ''In the instant case we are not interested in the question as to whether the trial court could have granted relief based on the claimed mistake of law, but, since the trial court denied relief, only in whether such holding was within its discretion.'' However, the cases demonstrate that the determining factor in the issue of excusable mistake of law is the reasonableness of the misconception. (*Garroway* v. *Jennings,* 189 Cal. 97 [207 P. 554]; *Moskowitz* v. *McGlinchey,* 85 Cal.App. 189 [259 P. 105]; *Shearman* v. *Jorgensen,* 106 Cal. 483 [39 P. 863]; *Willett* v.

*Schmeister Mfg.,* 80 Cal.App. 337 [251 P. 932]; *Salazar* v. *Steelman,* 22 Cal.App.2d 402 [71 P.2d 79].)

Recognizing the realities of office practice, the misfiling of papers (*Downing* v. *Klondike Mining etc. Co.,* 165 Cal. 786 [134 P. 970]), erroneous clerical entries (*H.G.B. Alexander & Co.* v. *Martz,* 90 Cal.App. 360 [265 P. 881]), and the like have been excused; but "press of business" standing alone has been considered as an insufficient excuse unless additional special circumstances exist (*Soda* v. *Marriott,* 130 Cal. App. 589 [20 P.2d 758]; *Carbondale Mach. Co.* v. *Eyraud,* 94 Cal.App. 356 [271 P. 349]). However, in the absence of further explanation and more complete and definite information concerning the matter in Richardson's affidavit that would bring the instant case within the exception, the trial court was fully justified in failing to find this to be a proper situation for relief.

The respondent contends that the six months' period mentioned in section 473, Code of Civil Procedure, is jurisdictional (*Berilla* v. *Pope,* 94 Cal.App.2d 743 [211 P.2d 639]) and that the trial court had no power to grant relief because the instant application was not filed within this period. In view of the record before us, we find no merit in this claim. As to when the six months begins to run, the courts have interpreted the clerk's entry of default as a "proceeding" taken against the party, which marks the beginning of the period, even though the judgment on the default is not entered until later (*Monica* v. *Oliveira,* 147 Cal.App.2d 275 [305 P.2d 169]). Default was entered March 3, 1958, notice of motion was filed August 27, 1958; and the oral motion was made and heard on September 15, 1958. Although our courts in the past have followed the rule that the oral motion (application) had to be made within the six months' period and relief could not be granted where the notice was served and filed before, although set for hearing after the time had expired (*Jones* v. *Alexander,* 101 Cal.App.2d 44 [224 P.2d 870]), it appears, under section 1005.5, Code of Civil Procedure, wherein notice is now deemed the motion for all purposes, that the strict rule found in *Jones* v. *Alexander, supra,* is abrogated and that service and filing within the period is sufficient.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.