[Civ. No. 26229.   Second Dist., Div. One.   Aug. 10, 1962.]

Estate of ARTHUR W. PARKS, Deceased. ALAN CRANS-
TON, as State Controller, Appellant, v. SUSAN M.
PARKS, Respondent.

Charles J. Barry, Chief Inheritance Tax Attorney, Joseph D. Lear, Acting Chief Inheritance Tax Attorney, Walter H. Miller, Chief Assistant Inheritance Tax Attorney, and William L. Baugh, Associate Inheritance Tax Attorney, for Appellant.

Trevey, Schwartz, Wood & Otero and Jack A. Otero for Respondent.

LILLIE, J.—Arthur W. Parks died July 15, 1960; his widow, Susan, is executrix under the will and sole beneficiary. In the course of the administration of the estate she filed an Inventory and Appraisement, item 17 of which recites a one-fifth interest in a testamentary trust created by Corinna J. Parks (decedent's mother) valued at the date of death in the sum of $74,637.84. This valuation was based upon information contained in a letter directed to the attorney for the executrix by the attorneys for the trustee; the executrix relied upon the same and it was accepted without further investigation by her and the inheritance tax appraiser. The latter thereupon filed his report, and an order fixing inheritance tax was entered December 22, 1960, fixing the tax at $7,910.32; on January 24, 1961, she paid the amount in full. The verified facts set up in the following documents reveal that at the time the order fixing inheritance tax was made the valuation of decedent's share in the Parks' trust on July 15, 1960, (date of death) was computed on the basis of the full face value of a promis-

sory note, the main asset of the trust; that said asset was overvalued and the valuation was incorrect in that it did not take into consideration the financial condition of the payor as of July 15, 1960, a situation then unknown to the executrix, and that the actual value of the note on July 15, 1960, was considerably less; that had she known these facts she would have objected to the report of the inheritance tax appraiser and the order, and she failed to do so by reason of her inadvertence and mistake.

Within six months after the order was made, certain facts relating to the reduction of the asset came to her attention, and on June 21, 1961, the executrix filed her verified application for modification of order fixing inheritance tax and for refund, with memorandum of points and authorities. The application set forth the above facts, and further alleged the major asset of the testamentary trust created by Corinna J. Parks to be a promissory note having a principal balance due on July 15, 1960, of $246,352, secured by a deed of trust on 66 acres which was subordinated to a $3,000,000 construction loan for the construction of 160 houses on the land; that decedent's one-fifth interest in the note and deed of trust was appraised at $67,885, its full face value; that in April 1961 the principal of the construction loan, in excess of $2,500,000 plus interest, was due and delinquent and the bank was ready to and threatening to foreclose, which foreclosure would have completely eliminated the interest of the Corinna J. Parks trust in the real property; that the trustees of the Parks' trust and the trustors of both the subordinated and construction loans reached a compromise whereby, among other things, the trust estate agreed to accept $105,000 on the remaining $246,352, principal balance then owing; that the compromise agreement was approved by the court on May 8, 1961; that it reduced the balance due to the trust from $246,352 to $105,000, a total reduction of $141,352, and thereby reduced the value of the interest of decedent's estate therein from $49,270 to $21,000, a reduction of $28,370; and that she paid inheritance tax on the $28,370 in the sum of $2,417; she prayed that said sum be refunded to her ''and for all other and proper orders.'' She cited in her memorandum of points and authorities in support of this verified application, first, section 473, Code of Civil Procedure, then, sections 13411, 13956 and 14361, Revenue and Taxation Code (relating to computation, valuation and refund of inheritance tax).

The application was set for hearing on August 17, 1961.

On that day the parties entered into a stipulation for continuance and for filing of declarations, and points and authorities and order continuing the hearing to September 11, 1961, and agreeing that the court may make an order allowing the filing by executrix of declarations in support of her application, provided they are filed by September 1, 1961.

On September 1, 1961, the executrix filed two declarations. The first, entitled declaration in support of motion was executed by Dudley A. Smith, general manager of two named corporations; (developers of the 66 acres constituting the Hidden Valley development); he alleged that in October 1959 and February 1960 the corporations executed notes to the bank for $1,512,900 and $1,384,700, respectively, payable in nine months, secured by deeds of trust on the land; that as of July 15, 1960, the balance on these two notes had not been reduced; that the corporations had planned that by July 15, 1960, the construction of the houses would be completed and most of them sold producing a projected profit of $2,000 per lot; that because of unforeseen factors, increased costs, delays, et cetera, construction was delayed, no houses were completed and only 25 were sold as of July 15, 1960; that a marketing survey made prior to July 15, 1960, showed that the price of the individual properties was too great to project any accelerated sales; that the results of this marketing survey were still correct as of July 15, 1960; that based upon all of these conditions, a loss rather than a profit could be anticipated on the development as of July 15, 1960, and the only way the loss could be absorbed would be to have the property purchased by the original sellers of the land or by reducing the purchase price; and that the corporations as of July 15, 1960, did not have the assets or credit by which to absorb the anticipated losses.

The second declaration filed September 1, 1961, was entitled declaration in support of motion and was executed by Susan M. Parks. She alleged that she read the declaration of Dudley A. Smith and that the facts set up therein were unknown to her prior thereto; that on October 25, 1960, she signed the inventory and appraisement showing certain detail relative to the interest of her husband's estate in the Corinna J. Parks trust—a one-fifth interest in a note of Bjorklund and Smith amounting to $69,230.37; that the note represented the balance of the purchase price on the land then being devleoped by the two corporations as the Hidden Valley development; that the valuation of $69,270.37, as shown in the inventory and ap-

praisement, was arrived at by reference to a letter of August 18, 1960, from the trustee's attorney to her counsel (copy of which was attached thereto as Ex. 1); that through "inadvertence and mistake" she relied upon the facts contained in the letter, made no independent investigation of the physical or financial conditions of the Hidden Valley development, and had no information or belief prior to December 22, 1960, which would indicate that the sum of $69,270.37 would not be paid in full, or that there was any danger it would not be paid in full; and further alleged: "I respectfully request that the order of the court fixing inheritance tax, dated December 22, 1960, be set aside on the grounds of inadvertence, mistake and excusable neglect, pursuant to the provisions of Code of Civil Procedure, Section 473, in order that the appraiser may correct his appraisal and the court may enter a new order fixing inheritance tax based upon a corrected appraisal."

On September 11, 1961, the application was heard; nothing was filed in opposition thereto; the lower court considered the verified application with memorandum of points and authorities, the stipulation for continuance and for filing of declarations and order and the two declarations in support of motion, and found that the diminution of the value of the asset is not such a contingency contemplated in section 14401, Revenue and Taxation Code, for affording relief to executrix; that "(T)he only remedy for relief open to the Executrix is under Section 473 of the Code of Civil Procedure"; and that the application, declarations and other documents present a proper case for granting relief under section 473, Code of Civil Procedure. (Memorandum of Decision.) It thereupon, and on November 22, 1961, entered its order that the application for modification of order fixing inheritance tax and for refund be denied; that the order fixing inheritance tax filed December 22, 1960, be set aside under section 473, Code of Civil Procedure; and that the clerk accept for filing any objections to the report of the inheritance tax appraiser.

Thereafter, on December 1, 1961, the executrix filed objection to report of inheritance tax appraiser, alleging therein that the inventory and appraisement shows a one-fifth interest in a note of Bjorklund and Smith amounting to $69,270.37; that the note represented the balance of the purchase price on the land being developed by two corporations as the Hidden Valley development; that the valuation of $69,270.37 was computed on the basis of the full face value of the note; that said valuation was incorrect as it did not take into consideration

the financial condition of the payor as of July 15, 1960; that the actual value of said note on July 15, 1960, was $41,000.37. She prayed that the report of the inheritance tax appraiser not be approved, the court find the total value of the estate to be reduced by $28,370 and that the total inheritance tax payable be fixed at $5,493.32.

The Controller of the State of California appeals from that portion of the order vacating the order fixing inheritance tax. He contends that the lower court had no jurisdiction to set aside the order under section 473, for the reason that the application therefor, 1. was made more than six months after the order was made and entered, 2. did not state the grounds to be inadvertence, mistake and excusable neglect, and 3. was not accompanied by any proposed objection to the report of the inheritance tax appraiser.

In connection with his first point, he argues that while the application was filed June 21, 1961 (five months and twenty-nine days after December 22, 1960), it did not constitute a proper application under section 473, thus none was filed within the six months' period; that the *only* application for relief under section 473 was filed September 1, 1961, in the form of a declaration in support of motion executed by Susan M. Parks and it was filed after the expiration of the statutory period. There is no merit to this contention. ▮▮▮▮ While the application filed June 21, 1961, did not employ the words, "inadvertence" and "mistake," and the prayer sought a refund of the excess tax paid, the executrix therein also prayed "for all other and proper orders"; her memorandum of points and authorities specifically cited in support of the relief prayed for, section 473, Code of Civil Procedure; and one cannot read the verified application and not know that the executrix permitted the order fixing inheritance tax to be made without objection under the mistaken belief that the face value of the note reflected its true value as of July 15, 1960, and that she was then unaware of the financial condition of the payor and other existing circumstances which had already, prior to and on July 15, 1960, resulted in a reduction of the value of the note, later approved by the court, and that unknown to her the asset on July 15, 1960, was overvalued. While specifically praying for a refund, the application, in substance, was basically directed to the matter of the mistake and inadvertence of the executrix, and provided a proper frame-work for relief under section 473, which the executrix obviously contemplated inasmuch as she also prayed for all other and proper

orders and cited section 473 as her initial authority. The declarations filed thereafter in accord with a court order "in support of said application" were for no other purpose, and did nothing more, than supply the factual detail of the allegations set up in the application; and while her own declaration requested the court to set aside the order on grounds of inadvertence and mistake pursuant to section 473, it was intended to be, and at most was, a document supporting the application—it neither added anything basically new to the application nor constituted a separate pleading.

██    Under section 1005.5, Code of Civil Procedure. ("A motion upon all the grounds stated in the written notice thereof is deemed to have been made and to be pending before the court for all purposes, upon the due service and filing of the notice of motion, but this shall not deprive a party of a hearing of the motion to which he is otherwise entitled."), and its clear application to proceedings taken under section 473 (*Bergloff* v. *Reynolds*, 181 Cal.App.2d 349 [5 Cal.Rptr. 461]; *Carver* v. *Platt*, 179 Cal.App.2d 140 [3 Cal.Rptr. 687]; *Garcia* v. *Gallo*, 176 Cal.App.2d 658 [1 Cal.Rptr. 539]), we deem the application to have been made on June 21, 1961 (within six months of the day the order was entered) and to have been pending before the court for all purposes since that time until its determination on November 22, 1961. In *Bergloff* v. *Reynolds*, 181 Cal.App.2d 349 [5 Cal.Rptr. 461], the notice of motion, (which, as herein, was not designated a motion to vacate) was filed five days after the order was entered, but was placed off calendar, continued and not heard and decided until some seven months thereafter. Said the court at page 358 : "We turn now to the contention that the relief granted the respondent was improper because section 473 of the Code of Civil Procedure provides that an application therefor 'must be made within a reasonable time, in no case exceeding six months, after such judgment, order or proceeding was taken.' But the difficulty with such position is that the respondent's notice of motion was filed five days after the order of dismissal was signed and filed and, under section 1005.5 of the Code of Civil Procedure, the motion 'is deemed to have been made and to be pending before the court for all purposes, upon the due service and filing of the notice of motion.' Accordingly, the motion of the respondent was deemed to have been made on July 8, 1958, and to have been pending at all times thereafter until the disposition thereof on February 26, 1959, of which the appellant here complains. (*Gardner* v. *Travaskis*, 158 Cal.

App.2d 410, 413 [322 P.2d 545]; *Batchelor* v. *Finn*, 169 Cal. App.2d 410, 417 [337 P.2d 545, 341 P.2d 803].) The court had jurisdiction to consider and pass upon the application after the expiration of the six months' period. (*Roseborough* v. *Campbell*, 46 Cal.App.2d 257, 261 [115 P.2d 839].)'' To the same effect is *Garcia* v. *Gallo*, 176 Cal.App.2d 658 [1 Cal. Rptr. 539], and *Carver* v. *Platt*, 179 Cal.App.2d 140 [3 Cal. Rptr. 687].

Appellant relies upon *Carver* v. *Platt*, 179 Cal.App.2d 140 [3 Cal.Rptr. 687], but the case is not here controlling; the factual situation is wholly distinguishable. Therein, two separate motions were made, the last one after a *denial* of the first long after the six-months' period had expired. This is not here the situation. In the *Carver* case, *supra*, the appeal was from an order *denying* the motion to vacate; the lower court found from the facts that two separate motions to vacate were in fact made, the last of which was independent and separate from the first. Plaintiff had filed a motion to vacate under section 473 within the statutory period; it was denied. Thereafter, and after the expiration of the six-months' period, he renewed the motion asking for similar relief. The court construed the renewal to be a ''second'' or ''new'' motion and, while recognizing the provision of section 1005.5, held that it did not apply because the second motion was not filed until after the six-months' period. Neither the lower court nor this court, in the instant case, construes the declaration in support of motion to be anything more than an affidavit filed in support of, to supplement, and as part of the application then pending; it does not itself constitute a second or new application nor can it be construed separate and apart from the application filed June 21, 1961.

Appellant says the application did not comply with section 473 as it did not state the grounds for relief to be inadvertence, mistake and excusable neglect. It appears to us that, while these specific terms were not used, clearly inherent in the facts set forth therein under oath is the basic inadvertence and mistake of the executrix in having permitted the order fixing inheritance tax to be entered without objection when, then unknown to her, the true facts did not justify the valuation at which the trust asset was fixed upon which the tax was based. However, her declaration, filed immediately after she ascertained the details of these facts, not only established without dispute that in truth the order was entered without her objection through her mistake, justifying relief

under section 473, but specifically alleged her "inadvertence and mistake" and requested the court to set aside the order for that reason.

Without question the declarations constituted a part of the application, were intended by the parties to support the application (stipulation), were filed as such and are so entitled, and contain no points and authorities. The declarations and the application can only be considered as one pleading. *Bergloff* v. *Reynolds*, 181 Cal.App.2d 349 [5 Cal. Rptr. 461], is a similar case. Therein a motion to dismiss was granted. Plaintiff thereafter filed a notice of motion stating he intended to petition the court to reconsider its ruling on the motion to dismiss, and for such other and further relief as the court may deem just and proper, based upon affidavits and memorandum of points and authorities referring to, and containing excerpts from section 473. Thereon the court vacated the order of dismissal. The same argument made here was there advanced—that the notice of motion neither referred to mistake, inadvertence, surprise or excusable neglect as the basis of relief, nor prayed for relief under section 473—and rejected by the court. "The notice of motion filed five days after the order of dismissal did not, it is true, specifically refer to mistake, inadvertence, surprise or excusable neglect as the basis of the relief sought. But the memorandum of points and authorities referred only to section 473 of the Code of Civil Procedure. Moreover, the affidavits in support of the motion were basically directed to the matter of mistake of Mr. Stebbins as to the whereabouts of the plaintiff and his giving of misinformation to the court with respect thereto because of such mistake." (P. 356.)

Moreover, the purpose of specifying the grounds in the application is to notify the opposing party on what he seeks relief. Again the case of *Bergloff, supra,* is in point. "In *Ramey* v. *Myers,* 159 Cal.App.2d 82 [323 P.2d 805], while the notice of motion did not specifically state the grounds on which it would be urged, it did state that the motion would be based upon points and authorities and an affidavit filed concurrently therewith. From such affidavit and points and authorities, the basis upon which the moving party was proceeding was clearly discernible. Mr. Justice Herndon stated at page 86 : 'From the foregoing it is apparent that appellant was given ample notice of the grounds upon which the motion would be made. Thus, as stated in *Shields* v. *Shields,* 55 Cal. App.2d 579, at page 584 [130 P.2d 982], "The purpose of the

code provision requiring that the grounds of the motion be set forth was sufficiently served and that is all that the law requires." To the same effect are *Savage* v. *Smith*, 170 Cal. 472, 474 [150 P. 353] ; *Giandeini* v. *Ramirez*, 11 Cal.App.2d 469, 475 [54 P.2d 91] ; *Perez* v. *Perez*, 111 Cal.App.2d 827, 830 [245 P.2d 344].'" (P. 357.) It cannot here be reasonably claimed that appellant was not given sufficient notice of the grounds upon which relief was granted. From the application citing section 473 in its support, its verified allegations and the declarations, the basis upon which the executrix was proceeding was clearly discernible—that through her mistake she did not object to the making of the order and thus she paid too much inheritance tax. Not only is it clear from the record that at the outset appellant was properly advised of the grounds upon which the court subsequently granted relief, but there is no showing therein that any prejudice was suffered by appellant for the failure of the application to employ one or all of the terms of the statute—"mistake, inadvertence, surprise or excusable neglect."

■ Appellant's last claim is that the application was not accompanied by a copy of the "pleading proposed to be filed therein" as required by section 473, in this instance a proposed objection to report of inheritance tax appraiser. While no separate document entitled "Proposed Objection" accompanied the application, in the absence of any particular form of objection required under section 14510, Revenue and Taxation Code, and in view of the objections to the report and order contained in the verified application and declarations, we deem the same to have complied with section 473. It is apparent from the record that the only objection the executrix could and would have made to the report of the inheritance tax appraiser prior to December 22, 1960, had she known the true facts, is that reflected in her verified application and declaration; and this is borne out in the objection to report of inheritance tax appraiser actually filed by her December 1, 1961. No other objection was ever urged then, or now. Thus the verified application actually contained the sole objection of the executrix to the report of the inheritance tax appraiser, as did her declaration in support of motion.

■ Section 14510 Revenue and Taxation Code fails to provide any particular form which an objection to an appraiser's report should take, it requires only a "written objection"; that it is not so entitled and may have been incorporated in another verified document does not make it any the less valid

or effective as an objection. Certainly from the application and declarations appellant was never in doubt as to the nature of the objections the executrix proposed to make, given an opportunity to file the same; and the objection actually filed by her on December 1, 1961, did not depart therefrom in substance or effect.

Contrary to appellant's contention that the failure to file a document entitled "Proposed Objection" with the application constituted a "fatal deficiency . . . finally recognized" by the court when, in its order to vacate, it ordered the clerk to accept for filing any objections to the report of the inheritance tax appraiser, the court in permitting the formal filing of the objection merely facilitated placing the record in such a state that it might then properly dispose of the controversy and enter its order accordingly.

Without doubt the moving papers were poorly drawn and lack technical language that makes them clearly identifiable as the documents they were intended to be. However we note with interest that nowhere in the record has appellant seen fit to controvert the sworn facts set up in the application, declarations and objections, or deny that the estate was overvalued in the manner and at the time claimed by the executrix. Thus, if we were to give the application and documents filed in support thereof the strained interpretation urged by appellant, the executrix would in all probability be denied any relief from the imposition of a tax on an asset the estate will never receive.

The order is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied September 7, 1962, and appellant's petition for a hearing by the Supreme Court was denied October 2, 1962.