Filed 12/10/13  Geiserman v. Tudor CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MARC GEISERMAN, et al., | D061679 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2009-00064794-CU-BC-EC) |
| DOUG D. TUDOR, | |
| Defendant and Appellant. | |

APPEAL from an order and judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Affirmed.

Doug D. Tudor, in pro. per., for Defendant and Appellant.

Goode, Hemme & Peterson, Thomas Goode, and John Malki, for Plaintiffs and Respondents.

In this business litigation, defendant Doug D. Tudor appeals from an order denying his motion to vacate a default and default judgment in favor of plaintiffs and

respondents Marc Geiserman,[1] Michael R. Marquardt, and Sheri D. Marquardt, as Trustees, etc. (plaintiffs).

On appeal, Tudor contends the trial court erred in denying his motion to set aside the default and default judgment under Code of Civil Procedure section 473.[2] Tudor argues the trial court erred by applying the wrong legal standard in striking his answer and it abused its discretion in imposing terminating sanctions.

We conclude the trial court did not err or abuse its discretion in denying the motion or in entering judgment. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Pleadings and Answer*

In March 2009, plaintiffs sued Tudor and the related corporate defendants (Club Cohiba etc.) for damages and dissolution of those limited liability companies. This dispute arose out of plaintiffs' investments in the limited liability companies.

In March 2009, defendants were served with the complaint.[3] All defendants filed a certificate of inability to respond. On May 14, 2009, the court granted them an

---

[1] During the pendency of the litigation, plaintiff Robert Geiserman died, and his son Marc Geiserman was substituted in his place as plaintiff representing his interests.

[2] All further statutory references are to the Code of Civil Procedure unless otherwise noted.

[3] Although Tudor failed to include in the record on appeal a copy of the original complaint and answer, we presume the trial court's order is supported by the record. (See *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132.) However, other documents inadvertently omitted from the clerk's transcript have been added by augmentation. These include the memorandum of points and authorities in support of

2

extension of time to respond until May 22, 2009 and ordered that a request for default previously submitted by plaintiffs would be held until May 22, 2009, but if defendants failed to respond by that time, the default would be entered.

On May 22, 2009, defendants filed an answer in the form of one pleading for all defendants. However, the court accepted the answer as to defendant Tudor only.[4]

In September 2009, the judge continued the case management conference (CMC) to October 26, 2009. At that hearing, Tudor failed to appear, but was allowed a telephonic appearance. Trial was set for April 16, 2010.

### B. Trial Management Hearings as of May 2010

This record shows that in May 2010, Tudor's defense counsel was relieved, while case management hearings were still going on. In pro. per., Tudor filed an untimely brief, and failed to appear at the scheduled CMC and order to show cause (OSC) hearings on June 25, 2010. On that date, another attorney made a special appearance for him, and informed the court of Tudor's incarceration on another matter. The court vacated the trial date and continued the CMC and OSC to September 3, 2010.

On September 3, 2010, Tudor did not appear at the CMC and OSC. However, Tudor's friend Patrick Maloy appeared and informed the court of Tudor's continued

---

Tudor's motion to set aside default and default judgment and the supporting declarations of attorney Janis Turner, Tudor, and his friend Patrick Maloy, and the opposition papers.

[4] No issues have been raised on appeal to challenge the rulings about the corporate defendants. Their answer was stricken twice, in 2009 and 2010, and their default entered on October 27, 2010 and their default judgment entered on October 11, 2011.

incarceration and requested a continuance on his behalf. The court continued the CMC and OSC to October 14, 2010.

On October 14, 2010, Tudor did not appear at the CMC and OSC. Again, Tudor's friend appeared and informed the court of his continued incarceration. The court issued another OSC why Tudor's answer should not be stricken and set it for hearing on December 3, 2010, on the continued CMC date.

On December 3, 2010, Tudor failed to appear at the CMC and OSC. However, the court referenced a letter it had received ex parte from Tudor, requesting another continuance and indicating his incarceration was near resolution.[5] The court again continued the CMC and OSC to February 4, 2011, based on Tudor's representations.

### C. Order Striking Answer and Entry of Default and Default Judgment

On February 4, 2011, Tudor again failed to appear at the CMC and OSC, and the court issued an order on February 9, 2011, striking Tudor's answer.

On February 14, 2011, the clerk entered Tudor's default. On August 19, 2011, plaintiffs filed a request for court judgment. On October 11, 2011, the court ordered judgment against all defendants for over $472,000.

### D. Motion for Relief From Default and Ruling

On August 28, 2011, Tudor retained attorney Janis Turner to challenge the defaults. On November 18, 2011, she filed Tudor's motion to set aside the default and

---

[5] As shown in his declaration in opposition to the motion, Tudor wrote other letters to the court dated January 28, 2011 and February 8, 2011. They are not file stamped and were not treated as pleadings by the court.

default judgment. At the motion hearing on December 9, 2011, the court denied the motions and explained its reasoning (to be set forth *post*).

## DISCUSSION

Tudor first contends the trial court abused its discretion in denying him relief from default under section 473. He claims he adequately showed "mistake, inadvertence, [surprise], or excusable neglect." (§ 473, subd. (b).) Tudor next contends the court applied the wrong legal standard in denying his motion to set aside the default judgment.

### I

### *MOTION FOR RELIEF FROM DEFAULT ENTERED FEBRUARY 14, 2011*

Tudor argues the trial court abused its discretion in denying his motion to set aside the default that was entered after his answer was stricken. We disagree. In denying Tudor's section 473 motion to set aside this court-imposed default, the court found that Tudor's motion was untimely. However, Tudor has failed to address the untimeliness of his motion in his appellate briefing.

A party who seeks discretionary relief under section 473 from entry of default or default judgment based on mistake, inadvertence, surprise, or excusable neglect, must bring the motion for relief "*within a reasonable time*" but "*in no case exceeding six months*" after the entry of default. (§ 473, subd. (b), italics added; *Rutan v. Summit Sports, Inc.* (1985) 173 Cal.App.3d 965, 970.) When such relief is sought, the limitation period runs from the date of the clerk's entry of default, and not from the date of entry of the default judgment, because "vacation of the judgment alone ordinarily would constitute an idle act; if the judgment were vacated the default would remain intact and

5

permit immediate entry of another judgment giving the plaintiff the relief to which his complaint entitles him." (*Ibid*.)

Thus, even if a defendant moves for relief within six months after the *default judgment* has been entered, if the motion is made more than six months after the underlying *default* was entered, it is too late. (*Koski v. U-Haul* (1963) 212 Cal.App.2d 640, 642-643; *Monica v. Oliveira* (1956) 147 Cal.App.2d 275, 276.) "[C]ourts have interpreted the clerk's entry of default as a 'proceeding' taken against the party, which marks the beginning of the period, even though the judgment on the default is not entered until later." (*Garcia v. Gallo* (1959) 176 Cal.App.2d 658, 669.)

As already discussed, Tudor's answer was stricken on February 4, 2011, and his default was entered on February 14, 2011. On November 18, 2011, Tudor brought a motion for relief under section 473, nine months after the entry of default, well beyond the six-month jurisdictional limit set forth in section 473, subdivision (b). Because Tudor failed to bring his motion for relief from default within the jurisdictional six-month time limit, his motion was untimely. (*Carrasco v. Craft* (1985) 164 Cal.App.3d 796, 805.) The court was justified in finding the motion untimely and in leaving the default in place, both as a matter of statutory interpretation and as an exercise of discretion.

## II

### *DISCRETIONARY RELIEF FROM DEFAULT JUDGMENT UNDER SECTION 473*

Although we could dispose of this appeal on the ground of untimeliness of the motion for relief from default, as discussed above, we acknowledge that Tudor has not

6

directly addressed that issue, and that each party has discussed the merits of an appeal from the default judgment itself. Accordingly, we exercise our discretion to decide the closely related question of the propriety of the default judgment entered.

## A. Issues Presented

Tudor contends his motion to set aside the default judgment was erroneously denied, because he showed there was mistake, inadvertence, or excusable neglect. (§ 473, subd. (b).) Tudor relies on two instances of attorney fault to claim mistake under section 473.

Tudor further contends that the trial court abused its discretion in denying his motion to set aside the default judgment when the court applied a negligence standard to issue "terminating sanctions." (§ 2023.030.) He argues there was no evidence he intentionally or willfully ignored a court order. (*Collisson & Kaplan v. Hartunian* (1994) 21 Cal.App.4th 1611, 1617-1618 [court imposed sanctions because the defendant intentionally and willfully avoided and ignored a court discovery order by giving evasive and incomplete answers].) Based on his former incarceration, Tudor also contends he was denied due process of law when the trial court granted default judgment for damages.

## B. Standard of Review

A trial court's ruling on a section 473 motion to set aside a default judgment is reviewed for abuse of discretion. The outcome of such a motion " 'rests almost entirely in the discretion of the court below, and appellate tribunals will rarely interfere, and never unless it clearly appears that there has been a plain abuse of discretion.'

7

[Citations.]"  (*City of Ontario v. Superior Court* (1970) 2 Cal.3d 335, 347.)  "Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered."  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)

We acknowledge that the trial court's discretion in ruling on such motions is limited by the public policy that favors trials on the merits, and that "very slight evidence is required to justify a trial court's order setting aside a default."  (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478.)  Thus, " 'a trial court order denying relief is scrutinized more carefully than an order permitting trial on the merits.'  [Citations.]"  (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 980.)

### C.  Section 473 Criteria and Application

Section 473 permits a trial court to grant relief from a default caused by a party's "mistake, inadvertence, surprise, or excusable neglect."  (§ 473, subd. (b).)  To obtain relief, the party must show his or her neglect or mistake was "excusable," e.g., the acts of a reasonably prudent person under the same circumstances.  (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1206.)

Tudor claims the history of the case shows that attorney Roger Heaton made a mistake by attempting to represent him when Heaton had a conflict of interest in the case. Although Heaton had agreed to appear for Tudor at the December 3, 2010 OSC and CMC hearing, he withdrew when he realized he had a conflict of interest.  Tudor claims the second instance of mistake occurred when attorney Janis Turner agreed to meet Tudor while he was in jail in the fall of 2010, but she was prevented from seeing Tudor and was

8

thus unable to have a retainer agreement signed. Later, she filed this motion on his behalf.[6]

Here, the acts of the two attorneys do not provide Tudor with excuses that are acceptable, in light of the relevant sequence of events before the underlying February 14, 2011 default was imposed, leading to the default judgment. While Heaton had a conflict of interest and was unable to represent Tudor at the December 3, 2010 OSC and CMC hearing, the court nevertheless considered Tudor's letter explaining his circumstances and granted a continuance of the OSC and CMC based on Tudor's representations. In addition, Turner did not formally represent Tudor at the time she was denied access to the jail and thus she could not have been held responsible for Tudor's inaction.

Further, there was a longstanding history of inexcusable neglect on the part of Tudor. The procedural history of this case, from September 2009 through October 2011, indicates that the court provided ample opportunity for Tudor to appear at the OSC and CMC hearings. While Tudor was incarcerated during a portion of the litigation, he received multiple continuances to respond. Tudor was released from jail on March 28, 2011 and thereafter did not do anything to address his default status in a timely way. Based upon these facts, the court acted well within its discretion in denying Tudor's motion for relief from judgment, since no mistake, inadvertence, surprise or excusable neglect justifying relief was shown.

---

6    In August 2011, six months after default was entered against Tudor, Turner became attorney of record for Tudor for purposes of bringing the motion filed in November and heard in December 2011.

9

Further, Tudor's reliance on the willfulness standard is inapposite here, because section 2023.030 applies to discovery sanctions imposed for misuse of the discovery process, such as terminating sanctions. (§ 2023.030, subd. (d).) Relief from default judgment is governed exclusively by the standards of section 473. Further, to the extent Tudor alleges that negligence is not the proper standard of analysis, the very words "excusable neglect" appear in section 473, subdivision (b), and prescribe a negligence analysis as the standard. The court's reasoning that Tudor "did not act as a reasonably prudent person" was thus an appropriate analysis of the record and application of the standard of excusable neglect.

Finally, the trial court did not deny Tudor due process of law. To support his due process claim, Tudor relies on section 128, subdivision (a)(8) for the general rule that a trial court shall have the power "to amend and control its processes and orders so as to make them conform to law and justice." (*Ibid.*) Tudor then complains his incarceration elsewhere entirely prevented him from responding to the civil suit.

There are several problems with this argument. First, this is not the proper forum to address or remedy any wrongful incarceration claim. Second, during a period of roughly 18 months, from September 2009 to February 2011, the court proceeded with OSC and CMC hearings, granted continuances, and heard these motion proceedings in an orderly way. The court provided Tudor with several sufficient opportunities to respond, which does not represent a denial of due process. Despite his incarcerated status for seven months, Tudor had some access to the court while he was incarcerated and was able to take some steps to defend himself in the action. He was given notice of every

OSC and CMC hearing, and the court, over the objections of plaintiffs' counsel, granted continuances that provided him with an opportunity to appear. Tudor communicated with the court and requested continuances on his hearings, through his letters to the court, and through friends. However, he did not bring a timely motion for relief from default.

This record does not demonstrate that Tudor's due process rights were violated. The trial court properly exercised its discretion in denying his motion to set aside the default judgment.

DISPOSITION

The judgment is affirmed. The parties are to bear their own costs on appeal.

HUFFMAN, Acting P. J.

WE CONCUR:

McDONALD, J.

McINTYRE, J.

11